914 SUPREME COURT OF LOUISIANA.

Hawley Down-Draft Furnace Co. vs. Southern Chemical & Fertilizing Co., Ltd.

## No. 12,915.

### HAWLEY DOWN-DRAFT FURNACE COMPANY vs. SOUTHERN CHEMICAL AND FERTILIZING COMPANY, LIMITED.

#### SYLLABUS.

1. As parties choose to bind themselves in their business agreements so must they be held bound.
2. Where, in a contract of sale of certain boiler furnaces, a guaranty as to results is stipulated, and a particular test is provided for to demonstrate these results, and the test fails in the particular guaranteed, the vendee may, in the absence of proof showing the test was conducted under conditions, accidental or otherwise, rendering it unfair, decline acceptance.

APPEAL from the Civil District Court for the Parish of Orleans. —*Ellis, J.*

*Fenner, Henderson & Fenner* for Plaintiff and Appellee.

*Branch K. Miller* for Defendant and Appellant.

Argued and submitted December 8, 1898.

Opinion handed down February 6, 1899.

Rehearing refused April 17, 1899.

The opinion of the court was delivered by

BLANCHARD, J.   Plaintiff company submitted in writing a proposition to defendant company to furnish the latter three Hawley-Down Draft furnaces, and lower portion of fronts for ash doors, for the sum of $2160.00. These furnaces were for horizontal tubular boilers in use at defendant company's works in the city of New Orleans.

Certain guarantees as to the work of the furnaces were embodied in the proposition of the company, as follows:

1.   To consume 95% of the smoke, burning any grade of bituminous coal.

2.   Will increase the efficiency of the boilers over 35% over their rated capacity.

3.   Burning any bituminous coal will save over 15% in cost of fuel over ordinary method of making steam, to be compared with smaller size boilers at the Louisiana Electric Light Company.

4.   Burning a certain kind of coal (naming it) will evaporate over 9 lbs. of water per lb. of coal making steam.

5.   Burning any bituminous coal will evaporate water into steam as dry as ordinary furnaces.

It was stipulated that final test was to be made on completion of the work of setting the boilers, making necessary attachments, connections, etc., and that if the furnaces failed to do as guaranteed plaintiff company were to remove them and replace former setting at their expense.

Also that the furnaces were to remain their property until accepted and paid for by the purchaser.

Defendant company accepted the proposition in writing.

The furnaces were delivered, fitted to the boilers, all attachments added, all connections adjusted, and everything made ready for the test.

The test came first on the boilers fitted with the Hawley-Down furnaces, and three days later on those with the ordinary furnaces.

By agreement the horizontal tubular boilers with ordinary furnaces at defendant's works were substituted for similar boilers at the La. Electric Light Company's works. That is to say, the comparison of

the results achieved by the boilers with the Hawley-Down furnaces at defendant company's works was made with results obtained under similar conditions on boilers with ordinary furnaces in use at defendant's works.

The test in each case was seven hours—from 9 a. m. to 4 p. m.

The result showed that 9.82 pounds of water per pound of coal had been evaporated during the seven hours by the boilers with the Hawley-Down furnaces, and 10.16 pounds of water per pound of coal by the boilers with the ordinary furnaces.

This was a superior showing for the ordinary furnace over the Hawley-Down furnace, and defendant company, thereupon, refused to receive and pay for the furnaces supplied by the plaintiff company, basing its action on the failure of the guaranty of the contract.

This suit was the outcome.

It is brought to recover the purchase price of the three furnaces, the substantial averments of the petition being the sale and delivery of the furnaces, the compliance by plaintiff company with its obligations under the contract of sale, and the fulfillment of the guarantees of the contract. Mention is made of the test of the furnaces sold with the ordinary furnace, and it is represented that this test demonstrated, to the satisfaction of experts, the superiority of plaintiff's furnaces over the other furnaces.

And the further allegation is made that defendant having expressed dissatisfaction with the results of the test, complainant had stood ready to make another test, which defendant company refused to assent to, except upon such onerous and unreasonable conditions with regard to the expense thereof and its imposition upon plaintiff company, that the latter was forced to decline it.

The defense is non-liability of defendant company because of the utter failure of the guaranties of the contract upon the practical application of the test as agreed upon; and it is averred that upon the failure of plaintiffs' furnaces to render the service contracted to be performed, they (plaintiffs) requested the privilege of another test, to which defendant company consented, provided the same be made immediately, or within two days thereafter, to which plaintiff agreed, and a day was fixed for the second test, on which day defendant was in readiness and prepared for the test, but plaintiff company declined to proceed, stating it preferred the test should be postponed, not, however, naming another day for it.

It is further represented that nothing more in relation to the matter was heard from plaintiff for some two weeks, when a demand for payment of the price of the furnaces was made, and that, subsequently, to-wit, some twenty days after the first test was concluded, plaintiff company again requested a second test, to which defendant company again assented, provided the expense necessary and incident to the same be borne by plaintiff.

The answer then goes on to describe the situation existing at that time at defendant company's works, different from what it was when the first test was made, what would have to be done, what changes effected, in order to prepare for the second test, and avers that the same would have entailed a total expense of two thousand dollars, which, under the circumstances, it was contended, plaintiff company should bear. The right of defendant to refuse the second test was averred, but its willingness to agree to same if the expense thereof were assumed by plaintiff, was signified.

There was judgment favorable to plaintiff in the court below and defendant company appeals.

The case presents mainly questions of fact.

We find that this sale has never been completed, that defendant has never accepted the furnaces, and that, under the contract, they remain the property of plaintiff company until accepted and paid for.

On the question as to whether defendant company was justified in refusing to accept them, we find that in the seven hours' test provided for in the contract, the guaranty of plaintiff company as to the superior evaporating qualities of its furnaces failed. That is to say, the third guaranty mentioned in the contract, viz.: "Burning any bituminous coal will save over 15 per cent in cost of fuel, over ordinary method of making steam," was not fulfilled.

As to the other guaranties of the contract plaintiff affirms their fulfillment, while defendant denies it.

Plaintiff does not claim that the third guaranty, quoted above, was fulfilled, taking the seven hours the test lasted as the gauge. But does claim that it was fulfilled, taking the first three hours of the test as the gauge, at the end of which time, it is contended, the results as to evaporation on the boilers equipped with ordinary furnaces showed only 7 92-100 pounds of water per pound of coal, whereas for the last four hours it showed 12 2-10. It is insisted, on behalf of plaintiff company, that this showing as to the last four hours is abnormal, and

demonstrated that something was wrong in the test. Just what was wrong is not asserted, nor does the evidence show it. There is an intimation that some of the water must have escaped in some other way than by evaporation into steam, but no proof of this appears. On the contrary, the evidence seems to negative the same.

The test provided for by the contract was for seven hours. This being so plaintiff's contention as to the showing for the first three hours cannot be accepted. Nor does defendant admit its figures as to 7 92-100 evaporation for the first three hours, and 12 2-10 for the last four hours.

It insists that no figures were to be taken and no results calculated except those appearing at the end of the seven hours, and that these showed 10 16-100 evaporation.

Plaintiff introduced expert testimony to show the results thus obtained were abnormal, and, because abnormal, the test an unfair one.

The trial judge took this view of the case and, hence, his decree favorable to plaintiff company.

But judging the case by the testimony in the record we can reach no other conclusion than that plaintiff company has not sustained its contention in this regard.

Just as much expert testimony, and apparently as strong and weighty, is found in support of the contention of defendant company that the results achieved at the test on the boilers with the ordinary furnaces, were not abnormal, as is found in support of the other contention that they were abnormal.

Under the circumstances, however, while no second test was provided for by the contract between the parties, plaintiff's request for another test was a reasonable one, and had it been refused the consequences thereof might well be visited on defendant company by an affirmance of the judgment below. But we do not find that defendant refused it. On the contrary, while plaintiff's representative at the test entered no formal objection, nor filed any protest, at the close thereof, when, after wiring the result to his principals in Chicago and receiving their instructions, he asked for another test, the manager of defendant company agreed to it and the same was to be conducted the next day, but plaintiff's representative did not appear until three o'clock of that day and then asked for a postponement until Monday. On Monday he informed defendants' representative he had

been ordered to return North and that another expert would be sent to conduct the test on behalf of plaintiffs. It does not appear that this second representative came for the purpose of conducting the test, and the next demand made was by plaintiff's attorneys, some two weeks later, for payment of the price of the furnaces.

And when, in connection with this demand, they expressed a desire or willingness for a second test, defendant company answered that the situation at their plant was then such that it would entail an expense of some two thousand dollars to make another test of the Hawley-Down furnaces against their ordinary furnaces, and a reasonable explanation was made why this was so.

They added that plaintiff company would have to bear this expense.

It thus appears that a second test was not denied by defendant company, and the same might have been made without the extra expense had plaintiff chosen to proceed with it in due time. It was not to be expected that defendant would keep matters in *statu quo* awaiting plaintiffs' pleasure in this regard.

Changes and improvements were needed at defendant's works and these were made, and thereafter the extra expense referred to would have to be incurred to enable the test to be made at their works. It does not appear that plaintiff offered or demanded that the test be made elsewhere than at defendant company's plant. It, perhaps, might have been made elsewhere without the extra expense, and, in this connection, it must be borne in mind that the contract stipulated for the test of the boilers with ordinary furnaces to be made at the La. Electric Light Company's plant.

This stipulation, it is true, had been waived at the first test and the same had been conducted on the boilers with ordinary furnaces at defendant's plant; but when the situation had changed at defendant's works and the second test could not be made there without the extra expense, it might still have been in plaintiff's power to have conducted the same at the place named in the contract—the works of the La. Electric Light Company.

Under the circumstances we cannot say that defendant was in fault with regard to this second test.

As these parties chose to bind themselves in their business agreement so must they be held bound.

While the testimony shows the Hawley-Down Draft furnace to be a

superior furnace, the test and the only test the parties chose to provide as showing its superiority failed, and as this was a guaranty of the contract of sale without the fulfillment of which there was to be no sale, defendant company had the legal right to refuse acceptance and payment.

It follows that plaintiffs must be non-suited on the principal demand of their petition.

On July 8th and 12th, 1895, they sold defendant certain small furnishings aggregating fourteen and 05-100 dollars. These appear upon the account annexed to the petition and do not seem to be contested.

Judgment in their favor for the same must be given.

As to defendant's demand in reconvention, we think the interests of justice require that it, too, be disallowed as in case of non-suit.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed, and that plaintiff's demand for two thousand, one hundred and sixty dollars, the contract price for three Hawley-Down Draft furnaces, be rejected as in case of non-suit.

It is further ordered, etc., that plaintiff do have and recover of defendant the sum of fourteen and 05-100 dollars, remainder of account sued on, with legal interest from judicial demand until paid.

It is further ordered, etc., that defendant's demand in reconvention be rejected as in case of non-suit, and that costs of the lower court be borne by defendants, those of appeal by plaintiffs.