(77 South 110)

(No. 22689.)

DOULLUT et al. v. RUSH et al.

In re DOULLUT et al.

(Oct. 29, 1917.    Rehearing Denied Dec. 8, 1917.)

*(Syllabus by the Court.)*

1. VENDOR AND PURCHASER ⬤═3 — SALE OR LEASE.

Where parties enter into a contract, by authentic act, which they call a lease, in which they call themselves lessor and lessee, and which contains all that the law requires in a contract of lease, the fact that it also contains an option to the lessee to buy the property, upon specified conditions, and certain stipulations, predicated upon the exercise of the right so conferred, is an insufficient basis for the defense, set up by the lessee, in an action of ejectment, for nonpayment of rent, that the contract is one of sale, where it is admitted that none of the conditions required to convert it into a contract of sale have been complied with.

2. ABATEMENT AND REVIVAL ⬤═4—PLEA OF PENDING SUIT—SUFFICIENCY.

A plea of lis pendens, filed in an action by a lessor to annul a lease and recover possession of the leased premises, and based upon a suit pending in the same court to recover installments of past-due rent, is not well founded, since the two suits are not pending in different courts, and their objects are not the same.

3. LANDLORD AND TENANT ⬤═315(2) — SUMMARY PROCEEDINGS—SUSPENSIVE APPEAL—STATUTE — CONSTRUCTION — "SPECIAL DEFENSE."

Construing Rev. St. 2157, with reference to its context, it is clear that it determines, to the exclusion of the general provisions of the Code of Practice upon the subject of appeals, the conditions upon which appeals may be obtained which suspend the execution of judgments ordering the ejection of the lessees and the putting of the lessors in possession of the leased premises; and that the requirement that the defendant shall have "filed a special defense, supported by his oath that all the facts contained in his answer are true and entitle him to retain possession of the premises," means that the defendant shall have set up relevant facts, susceptible of proof and admissible in evidence, which if proved, would entitle him to retain the disputed possession. Where, however, a defendant relies upon the averment that a written contract, made the basis of the suit, is not a contract of lease, but is a contract of sale, a question purely of law is presented, from a judgment upon which Rev. St. 2157, does not, of necessity, authorize a suspensive appeal, and the remedy of the defendant, in such case, would seem to be to invoke the supervisory jurisdiction of this court.

4. LANDLORD AND TENANT ⬤═315(2)—ACTION BY LANDLORD — BOND — CONSTRUCTION OF STATUTE.

Rev. St. 2157, requires that the appellant from a judgment ousting a lessee and putting the lessor in possession shall give bond, with good and solvent surety, "for all such damages as the appellee may sustain," and a bond conditioned that the appellant "shall satisfy whatever judgment may be rendered against him," as prescribed by the Code of Practice (article 579), does not comply with that requirement and will not sustain such appeal.

Action by M. P. Doullut and others against Mary Rush and others. Judgment for plaintiffs, and, a suspensive appeal having been granted, plaintiffs pray for certiorari to review that ruling. Appeal so far as operating to suspend execution of judgment appealed from dismissed, and respondent judge directed to cause the sheriff to proceed to the execution of such judgment.

E. H. McCaleb, of New Orleans, for relators.  E. N. Pugh, of Donaldsonville, and Lawrence Pugh, of Crowley, and J. C. & Thos. Gilmore, of New Orleans, for respondents.

Statement of the Case.

MONROE, C. J.  Relators obtained a judgment ordering the ejection of defendants, for nonpayment of rent, from certain premises, alleged to have been leased to them, and, a suspensive appeal having been granted therefrom, they invoke the supervisory jurisdiction of this court for the review and reversal of that ruling.  The facts disclosed by the record are as follows:

Plaintiffs brought their action in ejectment in May, 1917, alleging that in November, 1916, they had leased the premises in question to defendants, by notarial act, for 22 months, at a rental payable monthly in advance and aggregating nearly $10,000; that defendants

had failed to pay the rent for March, April, and May and had been notified to vacate; wherefore, they prayed for judgment ordering them so to do and returning plaintiffs to possession.

Defendants, by way of exception and answer, alleged, in substance: That on March 13th plaintiffs had brought a suit against them (bearing the number 119/662 of the docket of the district court) claiming $9,000 as due them for rent under the contract now sued on; that defendants, for answer, averred that the instrument sued on was a contract of sale, and not of lease, and that they owed plaintiffs no rent; that the suit was still pending; that the judge to whom this proceeding was allotted declined to exercise jurisdiction, on the ground that it is part of said pending suit; that plaintiffs acquiesced in said ruling; and that, until the issue so presented therein shall have been determined, this proceeding is premature, being an attempt to force the trial of an issue already before the court by means of a summary proceeding, which is allowed only between parties occupying the relations of lessor and lessee. They therefore pleaded lis pendens, and, in the event that plea should be overruled, and only in that event, set up the matters of defense alleged in their answer in the suit No. 119/662.

In order, then, to make the present situation intelligible, we add the following statement of the cause of action and defense as set up in the suit No. 119/662 (the record in which has been made part of this proceeding), to wit:

Plaintiffs, invoking the notarial act, here relied on, sued upon a note, issued by defendants in conformity to the provisions of said act and which had matured on March 1st, and upon other notes, similarly issued, as upon a contract of lease and rent notes identified therewith, alleging that, defendants having failed to pay the note due March 1st at maturity, the whole amount of the rent, as represented by the other notes, had become due and exigible in accordance with the terms of the contract; and they caused a writ of provisional seizure to issue and prayed for judgment accordingly. Defendants answered, in substance, as follows:

That, though the act declared on purports, in some respects, "to be a lease, yet, in truth and in point of fact, as appears from the entire context of said act and all the surrounding circumstances, it was, and such was the intention, declared repeatedly and stated at the time and subsequently, that it was a sale, pure and simple, of the Kneipp Water Cure, to defendants, for * * * $25,000, payable in monthly installments, up to August 30, 1918, when the balance of the purchase price, at that period, was payable, cash; said monthly notes, although denominated and called rent notes, were, in point of fact, and so understood, * * * representing a part and portion of the purchase price of said property. That the sale of said property was put in the shape it was by plaintiffs, at their instance, simply for their convenience and for the purpose of securing the partial price of said property, and not with any idea or intention * * * of * * * contracting a lease. * * * That a reading of the act clearly shows the intent of the parties, and all the charges, obligations, and burdens placed upon defendants were those of an owner or purchaser of property, and not of a mere lessee. * * * That defendants never would have signed said act had they been informed that they were leasing, instead of buying, the said property, but plaintiffs assured defendants that it was a sale. That the alleged rent of said property ($500 a month) is extravagant and out of all reason. That said act should be declared and decreed * * * to be exactly * * * what it is— an act of sale, and not a lease. Treating it as a lease, it is unconscionable and against good morals, and means ruin to defendants, and would be a deception practiced on them, and their signatures to said act were obtained on the express and repeated declaration of plaintiffs that it was a sale and that the mere form amounted to nothing, and that it was in that shape solely to protect plaintiffs' rights as vendors. * * * Defendants aver that said act is a sale and not a lease," etc.

There is no specific allegation to the effect that defendants are entitled to retain possession of the property. The contract in question contains the usual provisions and stipulations which are to be found in contracts of lease, and others which are not so found and which are pertinent to contracts of sale. It is, however, declared to be a lease'

and it not only contains no language purporting to convey title from plaintiffs to defendants, but confers upon defendants the option to purchase the property upon certain specified conditions which appear not to have been complied with. Thus, it reads in part:

"Lessors hereby lease unto said lessees the above-described property for the term of 22 months. * * * This lease is made for and in consideration of a monthly rental, payable in advance and as follows."

And then follow stipulations in regard to the giving of rent notes and the amounts and maturities of the same, after which we find:

"In addition to 'said rentals, the said lessees agree to pay all taxes, * * * all premiums of insurance, * * * all charges * * * for water and water service, and to comply with all city ordinances at their own expense. * * * The said lessees hereby agree to make all repairs necessary to the property to maintain and keep the property in proper and first class condition.

"The lessors will not be responsible for any damages whatsoever for any vices or defects of whatever character, and all damages of whatever nature * * * are hereby assumed by the lessees. * * *

"If, during the term of this lease, the said building * * * be destroyed by fire, * * * or partially destroyed, so as to render the premises leased wholly unfit for occupancy, * * * this lease shall come to an end. * * * The lessees shall, in such event, be entitled to a credit, * * * and the unearned portion of the rent notes shall be annulled. * * * Should the lessees, at any time, fail to pay the rent * * * as stipulated, the rent for the whole unexpired term * * * shall, without putting said lessees in default, become due and exigible. * * *

"The lessors hereby grant unto the lessees the option, or right, to purchase said property and premises at any time during the existence of this lease, provided said lessees are not in default, and provided further that they have fully complied with each and all of the stipulations of this lease, and provided further that all matured rent notes shall have been paid at their respective maturities, for the sum of $25,000, together with interest thereon at the rate of 7 per cent. per annum from November 1, 1916, subject to a credit of all rent notes that have been paid. Failure of the lessees to pay any of the rent notes as they mature (unless, by mutual consent, in writing, said maturity is extended) or from faithfully performing, in any way, any part of this contract, shall constitute a cancellation of this option and right of purchase, without any notice to said lessees or putting them in default, and the said lessees hereby agree to and do hereby forfeit any and all moneys that have been paid to the lessors on account of rentals or otherwise, and they further agree, in the event of said failure, to vacate the property within ten days after written notice has been served upon them by the lessors."

It appears that on May 1, 1917, plaintiffs discontinued their claim (in suit 119/662) for the rent to fall due from and after that date, and both cases were set down for trial on June 7th, and heard on that day, apparently together, and before the same judge. In the suit No. 119/662, after plaintiffs had offered their evidence, one of the defendants was called to the stand and asked:

"At the time that this contract was signed, and the notes, what was your understanding of the meaning of the contract that you signed"— to which counsel for plaintiffs objected, on the ground (with some others) that, in the absence of any charge of error or fraud in the making of the contract, parol evidence was inadmissible to vary the terms of the written instrument evidencing the same, and that the defense set up was that the contract sued on was one of sale, not of lease, which presented merely a question of law, which objections were sustained by the court, as were similar objections to similar testimony of other witnesses whom defendants offered to produce.

In this suit, plaintiffs offered the contract sued on, the unpaid notes, showed by admission that defendants had executed them, had failed to pay them on demand, and that they had received notice to vacate the premises more than ten days prior to the institution of this suit. Defendants had, on a previous occasion, offered the record in suit No. 119/662, but, on the hearing of this case on the merits, do not appear to have made any offer of evidence. Both matters were taken under advisement, and on June 18th there was judgment, in suit No. 119/662, in favor of plaintiffs for the rent which had fallen due on March 1st and April 1st, respectively, and, in this suit, making absolute the rule taken by plaintiffs and ordering that they be put in possession of the leased prop-

erty, from which (last mentioned) judgment defendants moved for, and were allowed, a suspensive appeal, on furnishing bond, conditioned as the law requires, in the sum of $1,500; and on the following day they filed a bond, the condition of which reads that the appellants "shall prosecute their suspensive appeal and shall satisfy whatever judgment may be rendered against them," etc. Thereupon plaintiffs moved that the appeal be set aside, in so far as it purports to operate suspensively, on the grounds:

That the defense relied on is that the contract sued on is a sale, and not a lease, and that defendants are owners, and not lessees, of the property. That said special defense is verified by oath only to the extent that the allegations of the answer are affirmed to be true, but that no allegation is made and no fact set up which entitles defendants to retain possession of the premises, nor does defendants' affidavit contain such allegation, as required by R. S. 2157. That the allegations of the answer, to the effect that said lease is a sale, and the oath in support of the same, are statements of conclusions, and not of facts, and are frivolous; the contract sued on being a lease, with an option to purchase. That it is not alleged that defendants have complied with said contract, either by paying the rent or exercising the option; but, on the contrary, that the facts, admitted and sworn to, are that defendants have neither paid nor offered to pay anything under their contract since March 1, 1917, and have confessed their default with respect to the payments for the months of March, April, May, and June, 1917, said payments having been long past due and the option to purchase having been canceled. That, in view of the admitted facts and under R. S. 2157, defendants are not entitled to retain possession of the leased premises and are not entitled to a suspensive appeal from the judgment ordering their ejection there-

from. That the bond of appeal furnished by them is insufficient, in that it imposes no liability upon the surety for the damages that may be sustained by plaintiffs, pending and by reason of the appeal. It appears that a change was thereafter made in the condition of the bond, but upon defendants calling attention to it, and it being admitted that it was unauthorized, it was ordered stricken out. The motion to set aside the appeal was, however, overruled, and thereupon plaintiffs presented to this court the application now under consideration. To the foregoing, we may add that, in the affidavits attached to their answers and exceptions, defendants swear merely to the truth of their allegations.

### Opinion.

[1, 2] Defendants, having been sued for rent upon a contract, by notarial act, in which it is termed a contract of lease, and upon notes executed by them, bearing the paraph of the "notary," "Ne varietur, in conformity with act of lease," which contract, so evidenced, contains all the requirements essential to a contract of "lease," and none which deprive it of that character, set up the defense that "the contract sued on was a contract of sale"; the last words in the body of their answer, filed in the suit for rent being, "defendants aver that said act is a sale, not a lease," and the prayer of that answer reading:

"Wherefore, premises considered, defendants, alleging that plaintiffs' suit is neither just nor well founded, pray that the same be dismissed, with costs, and said act sued on be declared and decreed to be a sale of property to your defendants, and not a lease, and defendants pray for all and general relief."

Not being satisfied, however, to rely upon the "act sued on" as evidencing a contract of sale, they alleged and undertook to prove (in suit 119/662) by oral evidence that there was a verbal and contemporaneous understanding that, notwithstanding its form, it

142 LA.—15

should be regarded as, and given the effect of, an act of sale.

Manifestly, the evidence was properly excluded, and, plaintiffs having discontinued with respect to the balance, there was judgment in their favor for two months' rental, amounting to $1,000, with interest added, maintaining the writ of provisional seizure which had been issued, and recognizing "plaintiffs' lessor's lien and privilege" upon the property and effects seized. In the meanwhile, alleging the defaults in the payments of the installments of rent due for preceding months, plaintiffs brought this suit to annul the lease and recover possession of the property, to which defendants interposed the exception of lis pendens, based upon the pendency of the suit for rent, which exception was properly overruled: First, because the two suits were not for the same object; and, next, because they were pending in the same court. C. P. 335; Saint v. Martel, 126 La. 245, 52 South. 474; Cook & Laurie Co. v. Denis, 126 La. 417, 52 South. 560. Defendants then adopted the answer which had been filed in the suit for rent, but, on the hearing of the rule herein taken, offered no evidence in support of their defense, from which it would appear that they are here relying entirely upon their contention that the contract "sued on" evidences a sale, and not a lease. If that contention were well founded, it would follow that this summary proceeding would be unauthorized, and that defendants' right of appeal would be governed by the provisions of the Code of Practice, and not by those of section 2157 of the Revised Statutes. Inasmuch however, as the contract sued on is embodied in a written instrument, the question whether it is a contract of sale or of lease is purely one of law, and, considering that it is so denominated by the parties thereto, and contains all the essential elements of such a contract, we hold it to be contract of lease;

and, so holding, are of opinion that plaintiffs were entitled to proceed, as they have done, to recover possession of the property thereby affected, in the summary method provided by R. S. 2155, as (last) amended and re-enacted by Act 313, p. 479, of 1908.

[3, 4] The section thus cited is found in the Revised Statutes under the title "Landlord and Tenant," and (as amended and re-enacted) is the only law which provides a method whereby a landlord can summarily eject a tenant and regain possession of the leased property. Sections 2155 and 2156 deal with that question, and the next section reads:

"Sec. 2157. No appeal from any such judgment shall suspend execution unless the defendant has filed a special defense, supported by his oath, that all the facts contained in his answer are true, and entitle him to retain possession of the premises, and unless, further, he give bond with good and sufficient security for all such damages as the appellee may sustain."

It is clear therefore that sections 2155 and 2156 provide a special remedy in a particular case (for which no provision is found elsewhere), and that section 2157 provides the special conditions under which an appeal from a judgment rendered in such case shall be allowed to suspend execution; and hence that the right to a suspensive appeal in such special case is governed by the special rules, prescribed by section 2157, and not by the general rules, prescribed for appeals in general, by the articles of the Code of Practice. And so this court has ruled. State ex rel. Lamouraine v. Judge, 45 La. Ann. 1316, 14 South. 232; State ex rel. Werlein v. Judge, 110 La. 1042, 35 South. 282; Audubon Hotel Co. v. Braunig, 119 La. 1070, 44 South. 891.

We therefore inquire whether, in taking their supposed suspensive appeal in this case, defendants have complied with the conditions prescribed by R. S. 2157. The section, as we have seen, declares, as the first condition to the exercise of that right, that

the defendant shall have filed "a special defense, supported by his oath that all the facts contained in his answer are true and entitle him to retain possession of the premises." It will be conceded that, in the interpretation of a statute, one must consider the purpose intended to be accomplished by it, and, as the obvious and declared purpose of the sections which precede is to provide a summary method whereby an owner may, with the least possible delay, obtain judgment returning him to possession of property, held by a tenant who will neither comply with the obligations of his lease nor surrender such possession, it is clear that section 2157, in prescribing the conditions upon which the execution of a judgment so obtained may be suspended by appeal, and section 2163, which declares that all such appeals shall be heard by preference in the Supreme Court, were enacted in furtherance of that same purpose.

It must be further conceded that the term "special defense," as used in the statute, means something other than, and different from, a "general denial," or defense couched in general terms, and, keeping in view the purpose of the statute, we are of opinion that it means the averment of relevant facts, susceptible of proof, and admissible in evidence, which, if proved, would entitle defendant to retain the disputed possession. If the alleged facts are irrelevant, or, for some other reason, are not susceptible of proof, they can never properly be brought to the knowledge of the court, could not, if proved, affect the issue to be decided, and could not be regarded as constituting a special defense, within the meaning of the statute, since (for instance) it would be absurd to hold that such a statute could be complied with by the filing of an answer alleging that the contract sued on had been written upon blue paper, even though the defendant should swear to that fact and would further swear that it entitled him to retain possession of the leased property.

If, in the instant case, defendants had alleged that the contract sued on is not the contract that they entered into, and that the contract entered into by them was one of sale, they would have presented a relevant question of fact, susceptible of proof, and (otherwise complying with the law) would have been entitled to a suspensive appeal; but they admit that the contract sued on is the one into which they entered, though they allege that there was, at the time, a verbal understanding to the effect that it was a contract of sale, but, no evidence having been offered in support of that allegation, and such evidence not being admissible, there is left no other ground of defense than that the contract sued on is one of sale. But, though the question whether they and plaintiffs entered into that contract is one of fact, the question whether it is a contract of sale or of lease is one of law, and section 2157 does not authorize a suspensive appeal upon allegations and affidavit as to defendant's opinion of the law of the case, which speaks for itself, and is to be interpreted and applied by the court.

If, in a given case, there should be a doubt as to whether the contract sued on is one of lease, or of some other kind, and hence a doubt as to whether the right to a suspensive appeal is governed by R. S. 2157 or by the provisions of the Code of Practice, the only adequate remedy, in the event of the granting of such appeal, on the one hand, or its denial, on the other, would seem to lie in an appeal to the supervisory jurisdiction of this court. Our conclusion, as to the matters thus considered, is that defendants were, and are, not entitled to the suspensive appeal which has been granted them, for the reason that the exceptions and answer filed by them do not constitute the special defense required by R. S. 2157, in that the

allegations of fact therein contained were not susceptible of proof (the evidence being inadmissible) and that the oath by which those allegations was supported did not, and could not, truthfully have set forth that the facts alleged entitled defendants to retain possession of the premises in question. Another reason, supporting the conclusion stated, is that the condition of the bond given by defendants reads "shall satisfy whatever judgment shall be rendered against them," etc., whereas section 2157, R. S., declares that:

"No appeal from any such judgment shall suspend execution unless the defendant * * * give bond, with good and sufficient security for all such damages as the appellee may sustain."

The judgment appealed from in this case condemned defendants to vacate the leased property and pay the costs of the suit, and ordered the sheriff to put plaintiffs in possession. If it be affirmed, it will be satisfied, as to the possession of the property, by the sheriff, without the aid of the surety on the bond, who, according to the bond, as written, will be liable only for the costs, though plaintiffs will have sustained damages to the extent of the lost rental of the premises, pending the appeal. In Audubon Hotel Co. v. Braunig et al., 119 La. 1070, 44 South. 891 (a case somewhat similar to this), the trial court had made an order granting defendants a suspensive appeal, upon their giving bond conditioned as the law requires, but subsequently set it aside, for several reasons, among which was that the bond, as given, had been conditioned as in this case and not as required by R. S. 2157. Defendants applied to this court for relief by way of certiorari and prohibition, and, in affirming the ruling of the trial court and holding that defendants were not entitled to the appeal, the court said:

"And finally, if the other conditions had existed, they failed to comply with the condition precedent to the taking effect of even a valid and competent order of appeal by failing al-

together to give the bond required by law and, necessarily, contemplated by such order."

In other words, as the law required a bond to cover the damages which the appellee might sustain by reason of the appeal, the order granting the appeal, upon appellants' giving bond "conditioned as the law requires," meant a bond so conditioned.

Counsel for defendants quote from Hennens' Digest, vol. 2, p. 1023, No. 6, as follows:

"The rule that, as one binds himself, he shall remain bound, may be true in mere conventional obligations, but the effect of judicial bonds must be tested by the law directing them to be taken; that which is superadded must be rejected and that which is omitted, supplied."

They failed to quote the concluding language of the paragraph, from which the above excerpt is taken, which reads:

"So, if there be no law authorizing such a bond to be taken, or if the prerequisites required for the taking thereof be not fulfilled. the bond will not bind; there is error and the consideration fails."

Reading the second clause of the paragraph with the first, it is evident that the intended application of the doctrine of the first clause is not that which the counsel here seek to make. That doctrine seems to have had its origin in proceedings against sureties on bail bonds, in which it has been held, on the one hand, that, whatever may be the terms of the bond, the surety cannot be held liable with respect to conditions not authorized by law, and, on the other hand, that he may be held liable with respect to and within the limits of the conditions so authorized. Thus, in Slocomb et al. v. Robert, 16 La. 173, defendant, being sued on a bail bond, resisted the claim on the ground that, before any judgment was rendered against him, he had surrendered his principal to the sheriff. The court said:

"It has been urged that we have often said: 'In whatsoever manner a man binds himself, he shall remain bound.' This may be true in mere conventional obligations, but not in judicial

bonds taken by the sheriff from persons in his custody. In such a case, the sheriff has no power to take any other bond but that which he is authorized by law to take. Any clause which is superadded must be rejected, and any that is omitted, supplied. The bond under consideration is evidently a bail bond, taken to secure the appearance of the defendant, and his forthcoming after a judgment, if a capias be taken against him. The surety, in such bond, is the friendly keeper of the principal, and may be relieved at any time, by surrendering him to the sheriff before he is fixed by a judgment on the bond; notwithstanding it provides that the principal debtor shall appear at the next term of court, or satisfy any judgment that may be rendered against him."

It is no doubt true that, in particular cases, and not a few of them, it has been held, in effect, that the law authorizing or requiring bonds in judicial proceedings is to be read into the bonds, for the supplying of their deficiencies, as, for instance, omissions of the signatures of the principals, of the amounts for which the bonds were intended to be given, where such amounts were fixed by law, errors and omissions with respect to the names of the obligees, etc.; but such rulings have been, by no means, of general application. In Lehman, Stern & Co. v. Broussard et al., 45 La. Ann. 346, 12 South. 504, it appeared that the amount for which a bond for attachment was intended to be given had not been written into the instrument, though the amount required was fixed by law, with reference to that claimed. This court said (45 La. Ann. 350, 351, 12 South. 505):

"It is impossible to hold that, though a bond for less than the amount required is fatally defective, a bond for no amount whatever can stand. We cannot apply the principle that 'judicial bonds must be tested by the law directing them to be taken; that which is superadded must be rejected, and that which is omitted, supplied.' This rule has been applied to added or omitted conditions in bail bonds and in bonds for the release of sequestered or attached property, where the bonds had accomplished their purpose and the sureties were held bound by legal conditions. * * * It has also been applied in the case of injunction bonds. * * * The rule has never been applied in cases * * * of attachments taken out on such insufficient bonds. The question here is, not whether the surety on such bond might be held

liable eventually, but whether the precedent conditions, prescribed by law, and without which the attachment cannot stand, have been complied with. Obviously, they have not."

And so, in the case now under consideration, the question is, not whether, or for what amount, the surety on the bond as given can be held liable, but whether the conditions precedent, prescribed by R. S. 2157, for suspending execution of plaintiffs' judgment, have been complied with. And the answer, as in the case cited, is obviously they have not; for the section in question declares that "no appeal from any such judgment shall suspend execution unless the defendant * * * give bond * * * for all such damages as the appellee may sustain," and no such bond has been given.

In Pelletier v. State Nat. Bank, 112 La. 564, 36 South. 592, a judgment for money having been rendered against the defendant bank it obtained an order for a suspensive appeal on furnishing bond as required by law, and furnished a bond for $15,000, which fell short, by $32.91, of the amount required by law, and the appeal was dismissed for that reason. In that case, as the judgment appealed from was for a specific sum of money, both the amount for which a bond was required and the condition upon which that amount, or some part of it, should become exigible, were prescribed by the Code of Practice, and, as the identical provision of law prescribes both requirements and declares compliance with both to be a condition to the exercise of the right to an appeal suspending execution, there can be no reason why failure to comply with the one should not be visited with the same penalty as failure to comply with the other, or why, if it is to be held that the law writes the one into the bond, it should not be held to write both; in which case, the whole matter would be simplified, and, in taking a suspensive appeal, it would only be necessary for the appellant to file a piece of paper, otherwise blank, con-

taining the legend, "This is intended, as a bond for appeal in favor of" (naming the party) "from the judgment herein rendered on" (such a date), and bearing the signature of some one signing as surety. It is quite evident, however, that our jurisprudence has not yet reached that point. In Succession of Calhoun, 35 La. Ann. 363, an appeal, taken from a judgment appointing an administrator, was dismissed on the ground that it was not conditioned as required by law. The court said:

"However much it may be claimed that judicial bonds are to be construed with reference to the law under which they are given, and that any clause which is superadded must be rejected, and any that is omitted, supplied, it surely cannot be insisted that, where the surety on a judicial bond has bound himself in a particular contingency only, he can be held liable in other contingencies. 4 A. 3. Tested by this general rule, however, the bond in this case is in no way responsive to the requirements of article 579 of the Code of Practice, under which it should have been given. The condition of this bond is that which the Code of Practice requires from litigants, invoking conservatory writs, for the protection of parties against whom they are issued, to pay such damages as may be sustained in case it be decided that the writ was wrongfully obtained. * * * The surety in this case has only bound himself to pay such damages as the appointed administrator may sustain in case it should be decided that the appeal was wrongfully obtained. It is difficult to conceive how the contingency provided for can ever arise at all. The surety has not bound himself to pay the costs of the litigation. In the absence of such obligation, no recovery could be had against him for the same. The bond should have been as prescribed by article 579, C. P. As it was not framed accordingly, but formulated under different articles, it is no valid bond in law. It is therefore ordered that the appeal be dismissed, with costs in both courts."

In the instant case, the bond was given in the form prescribed by article 579 of the Code of Practice, with a condition having no application to the judgment sought to be appealed from; whereas, it should have been given in the form prescribed by R. S. 2157, which declares that no appeal shall suspend the execution of such judgment unless the bond be given in that form.

Our examination of Act No. 112 of 1916, p. 241, fails to disclose anything which affects the issue here presented. It will be observed that R. S. 2157 is, ex vi termini, confined in its application to suspensive appeals, and that the relators herein ask that defendants' appeal be dismissed only in so far as it operates suspensively. For the reasons thus assigned, it is ordered that this appeal, in so far as it operates to suspend execution of the judgment appealed from, be dismissed, and that the respondent judge be directed to cause the sheriff to proceed with the execution of said judgment. It is further ordered that the cost of this proceeding be paid by the defendants.