## BOHANON v. STEWART

(March 29, 1926, Opinion and Decree)
(April 12, 1926, Rehearing Refused)

*(Syllabus by the Court.)*

1. **Louisiana Digest—Sales—Par. 4.**

A contract by which one purports to lease to another a certain oil burner for the period of sixteen and one-half months in consideration of $495.00, payable at the rate of $30.00 monthly, with the privilege of buying for $1.00 at the end of the lease conditioned upon payment of all prior installments and other usual conditions of sale, will be construed as a sale and not as a lease.

2. **Louisiana Digest—Sales—Par. 216.**

A vendor, unless warranty is waived, warrants the thing sold as fit for the particular purpose for which it was bought.

3. **Louisiana Digest—New Trial—Par. 3.**

A trial court may, ex-officio, order a new trial of the whole case, or may reopen it for the purpose of hearing additional evidence on a particular branch of the case.

Appeal from First City Court, Hon. W. Alexander Bahns, Judge.

Action by W. C. Bohanon against Samuel B. Stewart.

There was judgment for plaintiff and defendant appealed.

Judgment amended and affirmed.

E. E. Talbot, of New Orleans, attorney for plaintiff, appellee.

Chas. J. Rivet, of New Orleans, attorney for defendant, appellant.

CLAIBORNE, J. This is a suit to recover money paid under a contract which the plaintiff claims to be a sale and the defendant a lease.

Plaintiff alleged that on September 9, 1924, the defendant leased to him a combustion oil burner with the privilege of buying it at the end of sixteen and one-half months for the price of one dollar, in consideration of $495.00 payable in monthly installments; that said burner, as defendant well knew, was to be used by plaintiff in his cleaning and pressing plant; that the said contract, under the laws of this state, was a sale; that the said burner was guaranteed to keep the boiler in plaintiff's place of business at a working pressure of sixty pounds of steam; that said burner never functioned as defendant represented it would; that at no time was it able to keep the sixty pounds of steam guaranteed and necessary to the operation of plaintiff's plant; that immediately after the installation of the burner under the supervision of A. L. Develle, an employee of defendant, it became apparent that it was not giving satisfactory service and plaintiff so advised the defendant and requested him to take steps to have the burner work properly or to take it out forthwith, and in the meantime plaintiff refused to make any further payments; that the defendant asked for delay until

a factory representative from Milwaukee should come down and instruct Develle in the operation of the burner and adjust plaintiff's burner so as to make it operate successfully; that the representative from Milwaukee did come down and suggested several changes, that a damper be put in the boiler and a change be made in the brickwork inside of the boiler; that changes were made under the supervision of Develle and the factory representative; that after those changes were made the burner did produce sixty pounds of steam, but did not mainin this pressure during the operation of the presses, and the work of the burner was worse than before the changes; that Develle made seven or eight experiments without avail; that plaintiff paid one installment of $30.00 on the contract price of the burner prior to its delivery and $83.98 in installation and changes; that he has never been able to make the burner perform satisfactorily as represented to him; that after it became apparent that the burner could not work satisfactorily plaintiff requested defendant to remove it, it was then agreed that defendant should remove it without prejudice to either party; that in removing the oil tank from plaintiff's yard the defendant used water from plaintiff's hydrant of a value of $1.00; that defendant left the hole in the yard from which the oil tank had been removed, which cost plaintiff $25.00 to refill; that plaintiff was induced to sign the contract for buying the burner upon the representation made by defendant that his fuel bill would be reduced twenty per cent and that the burner would furnish sixty pounds of working steam for use in the plant; that the same machine was installed in the City Hall and in Randon's Cleaning and Pressing Shop, both of which were giving satisfaction; but that while plaintiff's coal bill was $32.00 per month, his bill for

fuel oil for use in defendant's burner ran as high as $68.00 per month, and plaintiff learned since that defendant's machines were not installed in either of the above places; that plaintiff's damage amounts to $239.94, which he claims from defendant.

The defendant admitted that execution of the contract of lease and that the burner was removed from plaintiff's premises without prejudice to either party, and in accordance with the contract which authorized him to resume possession on plaintiff's failure to pay the installments of rent; that the burner was fit for the purposes intended by the lease; that if the plaintiff did not get results therefrom, it was due to his want of skill in the installation and use of the burner, and to defects in his own apparatus to which he connected the burner.

Further answering, defendant alleged that the plaintiff paid the first installment of $30.00 but failed to pay the next one maturing September 20, 1924; that defendant repossessed himself of the burner on January 21, 1925; that for the rental of said burner while it remained in the possession of plaintiff defendant is entitled to $132.00, subject to a credit of $30.00, with interest and attorney's fees; that he is also entitled to recover the cost of taking back the burner amounting to $94.42.

He therefore claims in reconvention $94.42.

In order to adjudicate upon the rights of the parties it is necessary to determine the character of the contract declared upon by both the plaintiff and the defendant. The contract reads as follows:

"This agreement, made this 9th day of September, 1924, between Samuel B. Stewart, of the city of New Orleans, party of the first part, and W. C. Bohanon, residing at 1806 St. Roch avenue, pressing shop 1805 Spain street, New Orleans, La., party of the second part, witnesseth:

"The said party of the first part hereby leases unto the said second party for the term of 16½ months from the date hereof, upon the promises and conditions hereinafter set forth, the following described property, viz.:

"One combustion fuel oil burner with accessories, less automatic feature. Also one 1000-gal. tank for storage of fuel oil; also 20 feet 2-in. black pipe. No installing or connecting in this price; the entire apparatus is guaranteed to fire the present boiler to sixty pounds steam using fuel oil for fuel. In consideration thereof, said second party covenants and agrees to pay to said first party the sum of $495.00 as rent for the use of said property, during said term the same to be payable as follows: The first installment to be $30.00, due and payable on the delivery, and installment of $30.00 on the 20th of every month during the term. * * * It is further covenanted and agreed that in case of default in any of the payments of rental above provided for, the whole amount of rental above provided for shall at once become due and payable and suit may be brought thereon for same. Should this contract be placed in the hands of an attorney for collection, 20 per cent fees are to be paid. Any rental past due to bear 8 per cent interest until paid. It is further agreed that in case of any default in the payment of said rental, the said first party may enter upon the premises where said property may be and take away the same by forcible possession if necessary. * * * It is further expressly understood and agreed between the said first party and the said second party that should the said second party carry out all the covenants herein contained to be carried out by him and pay the said first party the full amount of the rent herein stipulated when the same falls due, the said second party shall have the right to purchase from the said first party all the property hereby leased for the sum of one

dollar ($1.00), upon receipt of which the said first party agrees to deliver a good bill of sale to the said second party for said property.

(Signed) "SAM B. STEWART,
"W. C. BOHANON."

Similar contracts have been made by dealers in sewing machines and pianos. By Act 62 of 1877, extra session, p. 102, the Legislature enacted that such contracts should be considered contracts of sale.

It is not the name which the parties give to a contract which fixes its character. Their common intention must control rather than the literal sense of the terms. C. C. 1950. So, also, the construction put upon it by both or by one with the assent of the other. C. C. 1956.

The syllabus in Long vs. Sun Co., 132 La. 601, 61 South. 684, reads as follows:

"The law looks beyond the mere terms used to describe a transaction to the substance of the transaction. The designation of a contract as a 'sale' will not make it such, where it is apparent that the parties were making a lease." 24 S. E. 147.

In this case the defendant, in two letters addressed to the plaintiff, spoke of the "burner which we sold you".

In the case of Seelig vs. Dumas, 48 La. Ann. 1494, 21 South. 91, the court said, on p. 1499:

"In the opinion heretofore rendered by us we adopted defendant's construction of the contract between plaintiff and Theresa Hamilton that it was one of sale. We reached that conclusion from the fact that possession had been given to Theresa Hamilton, from the large amount payable weekly, which, viewed from the standpoint of the contract, being a lease, would be out of proportion to the value of its use, and from the clause in the act by which, on default of any payment as agreed, the whole value of the furniture as mentioned in the annexed promise of sale ($5000.00) would be considered due."

In the contract before us the value of the property is fixed at $495.00, payable in sixteen and a half monthly installments of $30.00 each, or $360.00 a year, out of proportion to the value of the property, and the failure to pay one monthly installment to cause the maturity of all the others. By this clause the defendant could have sued the plaintiff for $460.00 rent on his failure to pay the first installment, could have seized and sold the burner to satisfy his judgment, although the plaintiff would not have enjoyed the possession and use of it. This can be done under the contract of sale but not under a lease.

In the case of Holcomb vs. Theodora, 1 La. App. 445, a contract very similar to the one before us was treated as a sale.

There is nothing in the Doulut-Rush case, 142 La. 443, opposed to these views.

The defendant testifies that the burner was "sold on a lease".

The French commentators throw no light upon the subject. They seem to conclude that every case depends upon its own facts. 18 Baudry-Lac., p. 15, S. 17.

We have, therefore, come to the conclusion that the contract under consideration is one of sale. Barber Asphalt Paving Co. vs. St. Louis Cypress Co., 121 La. 152, 46 South. 193.

In accordance with the decision of the Supreme Court, this court has repeatedly passed upon the liability of vendors.

In Hirstus vs. Capital City Auto Co., No. 7420, this court said:

"Unless warranty be expressly waived, the vendor warrants the thing sold as fit for the purpose intended. Fee vs. Sentell, 52 La. Ann. 1957, 28 South. 279. It is not incumbent upon the buyer in such case to seek out, allege and prove the particular and underlying cause of the defects which make the thing sold unfit for the purpose intended; particularly when that thing is a complicated piece of machinery; it is sufficient if he alleges and afterwards proves that as a fact such defects exist. On the contrary, it is for the vendor in such cases to show that the defects were such as the buyer knew or might have discovered by simple inspection. Otherwise, we should have the quaint result that the buyer must give the thing an elaborate and thorough examination in order to show that the defect was not discoverable by a simple inspection, or start an expert investigation into the condition of the machine in order to establish the self-evident fact that it did not run." Roses vs. Patorno, 2 La. App. 292; Blackner Rotary Pump Co. vs. Rantz Engineering and Machine Works, Inc., 1 La. App. 290; Hawley Down Draft Furnace Co. vs. Southern Chemical & Fertilizing Co., 51 La. Ann. 914, 25 South. 470.

A case very much like the one under consideration is Holcomb vs. Theodora, quoted supra.

The evidence is that the burner did not furnish sixty pounds of steam "with the machines working" and that in order to work plaintiff required sixty pounds; the burner would furnish the sixty pounds of steam only when the machine was idle; when at work it would drop to 40.

The contention of the defendant is that under his contract the entire apparatus is guaranteed to fire the present boiler to sixty pounds steam only when the machine was idle. That may be the letter of his contract, but not the spirit. If plaintiff's business required a 60-pound pressure to do his work, a burner that would not produce that amount of steam at that time was worthless to him. He did not need the steam while at rest; it was then useless to him and defendant knew that.

Defendant contends that the burner was not properly installed. But it was installed under blueprints furnished by defendant and under the direction of an employee of defendant; plaintiff complained to the defendant who attempted to remedy the trouble; the factory sent an agent who also tried but failed, after suggesting and making several changes; the defendant knew how many machines the plaintiff was to operate with this burner; he inspected everything; the plaintiff was to operate six pressers with the boiler and the defendant knew it, and he undertook to furnish a burner for that purpose; the defendant never went to plaintiffs' shop after the installation of the burner.

After the case had been tried and submitted, the trial judge, on motion of plaintiff, ordered the case reopened to hear the testimony of a newly discovered witness, "reserving to the defendant to also offer additional testimony".

The defendant objected to this proceeding.

We see no objection to the action of the judge. It has always been the jurisprudence that the granting of a new trial was within the discretion of the trial

judge whenever the ends of justice would be subserved by so doing. He may do so on motion of parties in interest or even ex-officio. V. La. Dig., p. 533.

Act 247 of 1908, p. 388, has consecrated this jurisprudence.

If the court can order a new trial of the whole case, he may reopen it for the purpose of hearing additional evidence on a particular branch of the case. But we do not think that the plaintiff is entitled to the full amount he claimed. We shall allow him the following items:

| | |
|---|---|
| Installation | $ 18.75 |
| Pipes | 7.64 |
| Electricity | 18.73 |
| Digging hole | 30.00 |
| Filling same | 25.00 |
| G. E. Meyer, 8 hrs. at 70c | 5.60 |
| Cash paid | 30.00 |
| | $135.72 |

It is therefore ordered that the judgment herein be reduced from two hundred and thirty-nine and 94-100 dollars to one hundred and thirty-five and 72-100 dollars with five per cent per annum interest from April 2, 1925, till paid, and as thus amended that the judgment appealed from be affirmed, the plaintiff and appellee to pay the costs of appeal and the defendant and appellant the costs of the lower court.

Judgment amended and affirmed.