AMERICAN HEATING & PLUMBING CO., INC., v. BETZ

(January 11, 1932.   Opinion and Decree.)
(February 15, 1932.   Rehearing Refused.)
(March 30, 1932.   Writs of Certiorari and Review Refused by Supreme Court.)

Milner & Porteous, P. M. Milner, and Fred C. Marx, of New Orleans, attorneys for plaintiff, appellant.

McCloskey & Benedict, of New Orleans, attorneys for defendant, appellee.

HIGGINS, J. Plaintiff sued defendant for the sum of $1,298, alleged to be due under a written contract dated September 26, 1927, whereby plaintiff undertook to install in defendant's residence a one-pipe gravity steam heating system furnishing labor and material therefor, and guaranteed to heat the rooms in which radiators were to be placed to 70° Fahrenheit when the outside temperature was 20° Fahrenheit.

The petition alleges that the work was commenced on October 12, 1927, and completed on November 17, 1927; that on November 21, 1927, plaintiff offered to accept $325 cash and sixteen monthly notes of $60.80, and one for $61, all bearing 7 per cent interest covering the contract price, but that defendant refused to accept the offer; that on December 2, 1927, a bearing in the pump became overheated due to lack of lubrication, and, pending repairs, plaintiff's men operated the pump; that on December 15, 1927, the pump again gave trouble; on December 17, 1927, the motor which propels the pump burned out; that again plaintiff's men operated the heating system and plaintiff wired the Murdock Pump Company of Indianapolis, Ind., for another vacuum pump, which was shipped on December 22, 1927; that on each day between December 17, 1927, and January 3, 1928, while waiting the arrival and installation of the new pump, plaintiff's employees operated the heating plant for defendant; that the pump was received on December 27, 1927, and on January 4, 1928, it was installed over defendant's objections; that on January 15, 1928, defendant had the electric wires to the motor disconnected; that on January 20, 1928, defendant arbitrarily and illegally notified plaintiff to take out the entire heating system otherwise she would have same removed at its cost. Plaintiff prayed for an injunction to prevent defendant from destroying the heating system and for judgment in its favor for $1,298, the full contract price.

Defendant admitted signing the contract and that plaintiff had installed a heating system in her residence, but denied liability on the ground that the system did not properly function so as to give the guaranteed heat; that it was constantly and continuously failing to work; that almost immediately upon its installation it broke down, and that the motor, pump, and vacuum tank were constantly out of order; that the radiators leaked and sprayed water over the rooms; that plaintiff's mechanics repeatedly attempted to remedy the defects from November 17, 1927, to January 20, 1928, when defendant finally rejected the system and ordered it

removed from her home; that defendant and her family suffered on account of lack of heat during the cold weather and had to resort to the use of oil and gas heaters.

The judge of the lower court granted a temporary restraining order, which was subsequently revoked, and, on the trial of the case on the merits, there was judgment in favor of defendant dismissing the suit, and plaintiff has appealed.

The sole issue, one of fact, is whether or not plaintiff complied with its obligations in installing the heating system according to the contract. Several witnesses, all employees of plaintiff, testified that the heating system was installed in accordance with the provisions of the contract, tested and tendered to defendant on November 17, 1927, and that the plant operated properly; that, upon a complaint from defendant on December 2, 1927, a mechanic was sent to examine the plant and found that the pump had become overheated for want of lubrication; that the pump was removed for the purpose of repairs, and that plaintiff's employees continued to operate the heating system until the pump was reinstalled; that no further complaint was made until December 15, 1927, when the pump was reported by defendant to again be giving trouble, and, upon examination, it was found that the pump had frozen and as a result thereof the motor had burned out; that it was necessary to have the motor rewired, and that plaintiff ordered a new pump from the Murdock Pump Company; that in the interim plaintiff's men operated the heating system for defendant; that the new pump was installed on January 4, 1928, although defendant objected to plaintiff doing so; that, upon defendant's complaint

that the furnace was burning too much coal, plaintiff's mechanics took out the condensation reservoir and reduced its capacity 50 per cent, but the mechanics admit this experiment to reduce fuel consumption was a failure; that on examining the system on January 10, 1928, after the installation of the new pump, it was found that the system had been restored to proper working order. The mechanics also testified that all of the trouble was attributable to the fact that defendant's husband and son did not lubricate the pump and motor as they were instructed to do every week; that on the two occasions when the pump was found out of order it was on account of lack of lubrication; that on the other occasions the heating system did not operate because defendant's husband and son left in the fire chamber of the furnace clinkers, which prevented combustion, as the draft was destroyed; that the trouble with the radiators was due to the fact that some one had turned the valve off, which prevented condensation from flowing from the radiators.

The evidence of defendant consisted of the testimony of her son, her husband, her son-in-law, and an electrician by the name of Whitely. Their testimony is to the effect that the heating system was installed by plaintiff and turned over to defendant on November 17, 1927; that on the same day it became out of order; that defendant notified plaintiff, whose mechanic examined the system and found that the pump was cracked at its base and that it was stuck, due to the fact that it was overheated, which was caused by the shaft on the pump being out of line; that the pump was taken out, repaired and reinstalled but immediately began to give similar trouble, and that it was again taken out, re-

paired, and reinstalled, but again gave trouble; that each time the system failed to function defendant notified plaintiff; that on December 5, 1927, the pump stuck and the motor froze, and it was necessary to take the motor out and have it rewired, but upon reinstalling it the pump would not work; that the radiators in the house leaked, and that upon complaint the vacuum tank or reservoir was taken out for the purpose of reducing its size by one-half of its capacity; that during the Christmas holidays plaintiff had to keep a man at defendant's home for the purpose of operating the system, but even on the occasions when plaintiff's men operated the system it failed to give heat; that it was necessary to install gas heaters and oil burners in order to maintain heat in the premises; that defendant's husband and son operated the heating system in accordance with instructions given to them by the representative of plaintiff company; that, at the time the plant was turned over to defendant, plaintiff's mechanic requested defendant's son to furnish him with some lubricating oil which he used on the pump and motor; that he told defendant's son that there was enough oil to run the system practically the whole season; that the mechanics and workmen of plaintiff were constantly attempting to repair the heating system, but in spite of their repeated efforts to remedy the defects they were unable to do so between November 17, 1927, and January 20, 1928, when defendant finally refused to accept the heating plant and ordered plaintiff to remove it from her home. Defendant's son and husband testified that they were familiar with the operation of the heating system, and operated it according to the instructions of plaintiff's mechanics; that the furnace was fired as the mechanics instructed by start-ing the fire with wood, and, after getting the proper combustion, adding coal and coke; and they strenuously denied that clinkers were left in the furnace.

After a careful reading of the record, the impression is inescapable that the heating system was constantly out of order from November 17, 1927, to January 20, 1928, due to different mechanical defects. It is significant that plaintiff, at all times during this period, had to have its workmen make the necessary repairs and install new parts and during the interim maintain the heating system by its own workmen, all free of charge to defendant. If the heating system had become out of order due to the fact that the motor and pump had not been properly lubricated by defendant's husband and son and because the furnace had not been properly cleared of clinkers which prevented proper draft and combustion in the fire chamber, there is no doubt that plaintiff would have refused to repair, maintain, and operate the system at its expense. We recognize that a heating contractor like plaintiff would have gone to some length to please a dissatisfied customer, but plaintiff's conduct in this case in incurring considerable expense consisting of many hours of labor and new parts (one item alone, the pump, costing $141.75) is such as to suggest a consciousness of responsibility and a realization of fault on the part of plaintiff.

The trial court who heard and saw the witnesses came to the conclusion that plaintiff had not installed the heating system in accordance with its contract, and dismissed plaintiff's suit. Only a question of fact is involved, and we can see no reason after a careful study of the record to disturb the findings of the trial court.