DUGUE v. SAFETY OIL BURNERS, Inc.*
No. 14106.

Court of Appeal of Louisiana. Orleans.
May 30, 1932.

---

*Rehearing denied June 27, 1932.

162

Howell Carter, Jr., of New Orleans, for appellant.

Lemle, Moreno & Lemle, of New Orleans, for appellee.

HIGGINS, J.

Plaintiff seeks to recover from defendant the sum of $200, said to be due him on account of a claim of redhibition and also as damages for breach of contract.

The petition alleges that on October 23, 1928, defendant sold and installed an automatic safety oil burner in plaintiff's duplex apartment for the sum of $350 and guaranteed the burner against all mechanical defects for a period of five years; that the burner was constantly out of order, and, in spite of defendant's repeated efforts to remedy the defects and cause the burner to properly function, it was unable to do so; that defendant insisted that the burner was all right, and that the trouble was with some other part of the heating system; that on November 11, 1930, defendant, after having a heating expert examine the entire heating system including the burner, agreed, in writing, to make certain designated changes, and further agreed to place the "heating system in first class condition in every respect," for the price and sum of $235 cash; that, notwithstanding the corrections by the defendant the burner continuously failed to function, thus causing plaintiff and his tenant to be without proper heat.

Defendant admitted the sale and installation of the burner and the subsequent repairs to the heating system, but denied liability, averring that the burner it had installed operated properly and was free from any vice or defect and that the repairs had been done in a workmanlike manner with good material.

There was judgment in favor of the plaintiff as prayed for, and defendant has appealed.

The record shows that during the year 1925 plaintiff built a duplex apartment in which he installed a hot-air heating system with a coal burner. In order to avoid the inconvenience incidental to using coal, he and his wife decided to have an automatic oil burner installed. The defendant inspected the premises and on October 23, 1928, agreed to install one of its automatic safety oil burners as evidenced by the following letter:

"We wish to thank you very much for your kind order to install our Automatic Safety Oil Burner in your residence 1428 Second Street.

"So that you may have a record of our guarantees we wish to state that the Burner is guaranteed from all mechanical defects for a period five (5) years and we will give you free service for a period of One (1) year from date of installation.

"The price of this installation including all equipment for a successful operation is Three Hundred and fifty ($350.00) dollars this price includes a 275 gal. tank in place of our usual equipment of 110 gal. tank.

"Again thanking you and assuring you of our services at all times, we beg to remain."

It appears that the burner was equipped with a "safety trip pan" which was designed for the purpose of having the burner mechanically shut off when the oil in the ignition chamber failed to burn and ran through a pipe into the safety pan, causing the mechanism to shut off the supply of oil, and resulting in the fire in the burner being extinguished. When this happened it was necessary for some one to go to the basement, empty the trip pan, replace the lever that supported it, and also turn on the oil in order that the fire might again be started by manual means by the insertion of lighted paper or combustible material in the fire chamber. This trouble continued regularly during the winters of 1928 and 1929 and the early part of the winter of 1930, notwithstanding the repeated efforts of the defendant to correct this condition upon the constant complaints of plaintiff.

Defendant's officer and mechanic took the position that the trouble was in some other part of the heating system, as distinguished from the burner, and that, if they were permitted to remedy these defects, the burner would then properly operate. Defendant's representatives, including their heating expert, apparently convinced the plaintiff that they were correct. Accordingly the contract contained in the letters of November 11, 1930, and November 17, 1930, was entered into which read as follows:

November 11, 1930:

"Confirming our conversation this A. M. we are pleased to submit to you our proposal to correct your Heating System.

"We propose to install a Fan large enough to overcome the intense heat in Basement, Dining room and etc. We are also to change

the location of Heater, repair Two (2) warm Air Ducts install entire new Cold Air Duct, in fact place your heating system in first class condition in every respect.

"The above work will cost you Two Hundred & Thirty Five ($235.00) Dollars.

"If you do 'the above work it will save you considerable in fuel and eventually pay for this installation.

"Hoping we may have the pleasure of making the above installation, we beg to remain."

November 17, 1930:

"We wish to thank you very much for your decision in having your heating system corrected.

"To confirm our guarantees as per our proposal of Nov. 11th, we wish to state that we will heat all rooms where there are registers to a uniform temperature and if you are not entirely satisfied with the changes and installations, we will replace your heating equipment in its original condition.

"We will give you Ninety (90) days to pay for this work.

"Again thanking you and assuring you of our continued services, we beg to remain."

After this work was done, the burner continued in failing to burn the oil so that the trip or safety pan constantly caused the fire to be extinguished as we have above described. Defendant made every effort to correct this, but was unsuccessful. Plaintiff then called in a heating engineer who examined the system in the presence of the vice president of the defendant company, and the engineer recommended installing a different kind of burner. A Ray Oil Burner was installed by another company, and on the several occasions in the latter part of the winter during which it was used it appears that the heating system and burner properly functioned and kept both apartments comfortably heated.

■■ While the evidence is conflicting on the issue of whether the original burner was defective or not, we are quite convinced, as was our learned brother below, that the burner was faulty and was not functioning properly and was not producing adequate and sufficient heat. Under these circumstances the plaintiff had a right to ask for a rescission of the sale and the return of the purchase price of the burner because of redhibitory vices and defects.

In Stewart v. Mumme, 14 La. App. 458, 131 So. 683, 684, we said:

" * * * But it was demonstrated that he was mistaken, both as to the weather conditions and the temperature of the house during the test. Defendants were not obliged to permit plaintiff to indulge in a constant tinkering .with the system in the hope that it might ultimately produce results. It is not necessary that the system should have been proven to be utterly worthless. It is suffi-

cient that it be 'so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice.' Rev. Civ. Code, art. 2520. See, also, Bohanon v. Stewart, 4 La. App. 150; Hawley Down-Draft Furnace Co. v. Southern Chemical & Fertilizer Co., Ltd., 51 La. Ann. 915, 25 So. 470."

See, also, Junius Hart Piano House, Ltd., v. Tauzin, 5 La. App. 495; A. Baldwin & Co.. Inc., v. Wall, 18 La. App. 339, 138 So. 442; Guest & Viviano Sheet Metal Works v. Hardouin, 18 La. App. 342, 138 So. 448; Hirsius v. Capital City Auto Company, No. 7420 of the docket of this Court, see Louisiana and Southern Digest; Jackson v. Breard Motor Company, Inc., 167 La. 858, 120 So. 478; Chas. A. Kaufman Company, Ltd., v. Martin J. Gillman, 142 So. 159, decided by this Court this day; American Heating & Plumbing Co. v. Betz, 19 La. App. 140, 138 So. 912.

■■ Counsel for defendant filed a plea of prescription of one year, as to the claim of redhibition, in this court, based on article 2534 of the R. C. C., which reads as follows:

"The redhibitory action must be instituted within a year, at the farthest, commencing from the date of the sale.

"This limitation does not apply where the seller had knowledge of the vice and neglected to declare it to the purchaser.

"Nor where the seller, not being domiciliated in the State, shall have absented himself before the expiration of the year following the sale; in which case the prescription remains suspended during his absence."

We do not believe the plea of prescription is good, because we are quite convinced that the seller had knowledge of the vice in the burner and neglected to declare it to the purchaser. The plaintiff did not discover that the latent defect was in the burner until after the installation of the work by the defendant under its contract of November 11, 1930, and this suit was filed on September 29, 1931, or less than one year after the defect was discovered .by plaintiff. Furthermore, the defendant in its original contract guaranteed the burner against all mechanical defects for a period of five years, and therefore, by its written agreement, extended the prescriptive period from one to five years within which the plaintiff had a right to bring an action of redhibition.

As to the claim for damages for breach of contract, the record clearly shows that the plaintiff accepted all the work done by the defendant under the contract and allowed the defendant a credit in the sum of $235 on account of his present claims. We conclude that the work that was done by the defendant under the second contract was satisfactory, and, if there is any breach in the agreement, it is only because the defendant failed to in-

stall the necessary fireproofing, which the plaintiff subsequently had done at the cost of $25. The evidence convinces us that the defendant should have had the fireproofing work done in order to carry out its agreement to place the heating system in a first-class condition in every respect.

We are unable to agree with the plaintiff in the manner in which he calculates the amount of his claims. He itemizes them as follows:

Installation of Ray Oil Burner.......$375.00
Necessary fire proofing..............  25.00
Clock thermostat....................  35.00

$435.00

On account of the $435, he allows a credit of $235 for the work performed by the defendant under the contract of November 11, 1930, leaving a balance of $200 for which amount he brings this suit. We do not believe that the plaintiff is entitled to charge the defendant for the price and installation of a Ray Oil Burner in the sum of $375, because a new burner was not contemplated by the parties in signing the contract of November 11, 1930. As we view the matter, under the claim of redhibition plaintiff is entitled to the return of the purchase price of the burner less the price or value of the 275-gallon oil tank which he retained. Unfortunately the record does not show how much the tank was worth, the contract of October 23, 1928, giving a globo price for the installation of the burner and tank. It will therefore be necessary to remand the case to have the value of the tank determined, because the plaintiff has kept the tank and is using it, and therefore defendant is entitled to a credit for the value of it. It appears that the electrical equipment and thermostat used on the safety oil burner could not be used on the Ray Oil Burner. We therefore find that the plaintiff is entitled to the return of the purchase price of the safety oil burner of $350 less a credit for the value of the oil tank. Plaintiff is also entitled to the sum of $25 for breach of the contract of November 11, 1930, because the defendant did not install the necessary fireproofing, which we believe its contract required it to do. The total amount that the plaintiff would be entitled to recover from the defendant would be the sum of $350 plus $25, or $375, less a credit of $235, the price of the work done under the contract of November 11, 1930, plus the value of the 275-gallon oil tank retained by him. In short, the plaintiff is entitled to a judgment for the sum of $140 subject to a credit for the oil tank. In remanding the case, we do so only for the purpose of ascertaining the value of the oil tank at the time it was installed.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court be, and it is hereby, reversed, and the case remanded to the lower court for further proceedings not inconsistent with the views herein expressed; appellee to pay the costs of this court.

Reversed and remanded.