**AMERICAN HEATING & PLUMBING CO., Inc., v. VETERS.***

No. 16137.

Court of Appeal of Louisiana. Orleans.

Dec. 2, 1935.

S. Sanford Levy, of New Orleans, for appellant.

P. M. Milner, of New Orleans, for appellee.

WESTERFIELD, Judge.

This suit grows out of a written contract between plaintiff and defendant, whereby, for a consideration of $2,350, plaintiff agreed to install in defendant's residence an oil-burning heating plant. Plaintiff claims $350, the balance due under the contract, represented by three promissory notes. The defendant in her answer averred that there was a failure of consideration of the notes sued on because the heating plant, in part payment of which they were issued, was radically defective in that it failed to conform with the representations and guaranties expressed in the contract, and, assuming the character of plaintiff in reconvention, asked for the return of the $2,000 paid defendant on the ground that the heating system was utterly worthless for the use for which it was intended.

There was judgment below in plaintiff's favor, as prayed for, and against the defendant, dismissing her reconventional demand. Defendant has appealed.

The contract is in the form of a proposal and acceptance, which reads, in part, as follows:

"New Orleans, La., Oct. 22, 1928.
"Misses A. J. & P. Vetters, Whitney Building, New Orleans, La.
"In Re: #6028 Prytania St.

"Dear Misses Vetters: We propose to furnish and install in your home, #6028 Prytania Street, a One Pipe Gravity Steam Heating System and a Williams Oil-O-Matic Oil Burner, furnishing all labor and material, guaranteeing same to keep the entire house at any desired uniform temperature up to 50 degrees above the outside temperature, and completing same for the sum of Two Thousand Three Hundred and Fifty Dollars ($2,350.00).

"Including the following:

"In the rear of your house we will construct a galvanized iron boiler room, same to have a concrete floor. This room will be of sufficient size to properly house all necessary equipment for heating your home as above set forth, and will be equipped with a door and lock.

"In this boiler house will be installed by us an Ideal American Radiator Co's. Red Flash Boiler 1–S–9–0 with a rated capacity of 1100 square feet of direct steam radiation, which boiler will be sufficient to supply and heating your entire house to the temperature above mentioned. * * *

"There will be furnished and connected to the boiler a #1200 Model "J" Williams Oil-O-Matic Oil Burner, which we guarantee to be sufficient to properly heat your entire house to the temperature set forth hereinabove in the first paragraph, and which will be equipped with complete electric ignition and controlled by an automatic Tork Clock, which will automatically turn the heater off and on at the time indicated by you, and a thermostat which will control the amount of heat supplied and maintain in your house a uniform heat of any desired temperature up to 50 degrees above the temperature outside, and also an automatic safety control which will automatically cut off the oil burner if it fails to ignite, and an automatic steamstat which will control the pressure in the boiler

without attention from you. As the thermostat can only be adjusted for a maximum temperature of 80° a switch will be installed to cut out same. * * *

"Automatic Tork clock to be installed in rear hall on first floor. Thermostat to be installed where same will operate for best results.

"A 500 gallon fuel oil storage tank to be furnished and installed by us, conforming to the requirements of the Fire Underwriters. Tank to be painted with water-proof paint. * * *

"We guarantee the above equipment, including furnace, radiators and oil burner to be sufficient to heat and to properly heat your entire house, keeping same at any desired temperature up to 50 degrees above the outside temperature.

"This work is to be started at once and is to be completed not later than November 20th, 1928, or we pay liquidated damages of twenty (20) dollars per day after November 20, 1928 until said work is completed.

"Payment to be made as follows: $500, on completion of work; $500, on January 1, 1929; $100 per month to be paid on the first day of each and every month thereafter until the balance has been paid, except the last month when $50.00 will be paid. All deferred payments to bear interest at 7% from date of completion of work until paid.

"Yours truly,
"American Heating & Plumbing Co., Inc.,
"N. J. Helwick, Secretary."
"Accepted: This 22 day of Oct. 1928.
"Anna Judge Veters.
"American Heating & Plumbing Co., Inc.,
"Leander Marx, Pres."

As we said concerning a similar case brought by the present plaintiff, American Heating & Plumbing Co. v. Betz, 19 La. App. 140, 142, 138 So. 912, "The sole issue, one of fact, is whether or not plaintiff complied with its obligations in installing the heating system according to the contract."

The installation of the heating plant was completed by plaintiff on November 18, 1928, and almost immediately thereafter was the subject of complaint by defendant concerning its failure to heat. Plaintiff attempted to correct the deficiency complained of, but apparently with little success so far as satisfying defendant is concerned, for we find her writing to plaintiff under date of February 18, 1929, as follows:

"American Heating and Plumbing Co., Inc., 829 Baronne St., New Orleans.

"Gentlemen: Your Mr. Helwick assures me that the heating system is now working, and I am therefore paying the note which was due February 1st.

"I hope Mr. Helwick is right—he has said several times that the system was working and the next cold spell proved he was wrong. Up to the present time it has never worked.

"Yours very truly,
"Anna Judge Veters."

On April 1, 1929, defendant wrote again, saying:

"April 1, 1929.

"American Heating & Plumbing Co., 829 Baronne St., New Orleans, La.

"Gentlemen: This will confirm our telephone conversation in which it was agreed that I will pay the notes due March 1st and April 1st and will go on paying those falling due during the coming months, although it is too warm now to test out the heating system any more this season—it being understood that I shall pay these notes with full reservation of all of my rights and relying upon your assurance that you will make the heating system work perfectly.

"As I have advised you many times over the telephone, this system has never started once without your mechanic being called in and within an hour after he leaves, it stops and won't go again until he tears down the whole works. Even with him here nursing it, the system has never yet heated the house uniformly or comfortably.

"However, as I told you over the telephone, I will go on paying the notes without prejudice to my rights, it being understood and admitted that the system has not yet worked.

"Yours very truly,
"Anna Judge Veters."

Again, on December 28, 1929, another letter was written to defendant in which the complaint is made that the system is not automatic and can only be started by a mechanic, when it will run for a short time and stop again. This letter concludes with a request that the system be removed from the premises and the amount paid, $2,000, returned. On April 21, 1930, another letter, a long one, was written by de-

fendant in which the same complaint is made, with a description of the inconvenience and discomfort which defendant and her household were required to experience on account of the alleged defective heater. Still another letter was written by defendant under date of December 17, 1930, as follows:

"December 17, 1930.

"American Heating and Plumbing Co., 829 Baronne St., New Orleans.

"Attention: Mr. Archibald A. Marx.

"Gentlemen: Another year is drawing to a close and still I am without a heating system, after having paid you over $2,000 for a system installed by you in accordance with your own specifications.

"Your records will show that during the extremely cold weather of last winter we were without heat.

"You finally decided that our burner was defective but by the time you installed a new burner, the cold weather was past. However, you felt confident that the system would give satisfaction this winter and I therefore agreed to try it once more as soon as the cold weather set in, although I notified you that if it did not work you would have to take it out and refund my money.

"Yesterday inaugurated the first cold weather of this season and the system has fallen down just as it did last year. We were without heat yesterday and we are still without heat today. I am therefore notifying you to remove this system immediately and return to me the price thereof so that I can have a new system installed. If you fail to do this, I shall hold you for any damages suffered by me and the members of my family on account of the lack of heat.

"Yours very truly,
    "Anna Judge Veters."

Another letter of March 8, 1932, and a final letter of March 10, 1932, was addressed to plaintiff in which the same complaint is made concerning the failure of the heating system to heat defendant's house.

Apparently these letters were not answered, but, as appears from their text, mechanics were sent to defendant's residence in an effort to satisfy her. At one time a new burner was installed. At another time a new thermostat was connected with the system, and at other times minor repairs and adjustments were attempted.

Plaintiff maintains that the heating system was all that it was intended to be, efficient and automatic, and that such repairs as were made from time to time were nothing more than the customary service which all new installations required. Several witnesses, employees of plaintiff, testified in its behalf in support of its position.

On behalf of defendant, three experts testified that the system would not and could not be made to work properly because the combustion chamber of the boiler was too small, and for other reasons.

■ As a whole, the evidence clearly preponderates in favor of defendant, and we are convinced that the heating system as installed by the plaintiff did not comply with its contract guarantee, and certainly was so imperfect that its defects, if known to the defendant, would have prevented its purchase. See American Heating & Plumbing Co. v. Betz, supra; Stewart v. Clay, 10 La.App. 727, 123 So. 158; Stewart v. Machin, 10 La.App. 754, 123 So. 160; Stewart v. Scott, 6 La.App. 744; Davidson v. Baker Fuel Oil Burner Co., 16 La.App. 339, 134 So. 108; Stewart v. Mumme, 14 La.App. 458, 131 So. 683.

■ It is said that defendant's claim is stale because she waited three or four years before going to court with it, and then only as a defendant in a reconventional demand. Meanwhile payments were made on account of the contract price in a considerable sum. Some sort of estoppel is urged as a result of these facts, but is not briefed or argued except as a reflection upon defendant's sincerity. It is clear that no estoppel results, for, from the beginning, and constantly during the entire time, defendant was careful to inform plaintiff that she would only pay the notes under protest and with reservation of her right to reject the system. The silence of plaintiff imported an implied acquiescence in this arrangement.

For the reasons assigned, the judgment appealed from is reversed, and it is now ordered that there be judgment on the main demand in favor of defendant, Anna J. Veters, and against American Heating & Plumbing Co., Inc., plaintiff, dismissing plaintiff's suit, and that on the reconventional demand there be judgment in favor of Anna J. Veters, plaintiff in reconvention, and against American Heating & Plumbing Co., defendant in reconvention, in the full sum of $2,000, with legal interest from judicial demand.

It is further ordered that the American Heating & Plumbing Co., Inc., plaintiff herein, be condemned to remove from the premises of defendant the heating system installed therein, within thirty days of the date on which this judgment becomes final.

Reversed.