No. 894

First Circuit

G. J. DEVILLE LBR. CO., INC. v. JAUBERT

(February 8, 1932. Opinion and Decree.)

Guillory & Guillory, of Ville Platte, attorneys for plaintiff, appellant.

J. H. Dore, of Ville Platte, attorney for defendant, appellee.

LeBLANC, J. Plaintiff instituted this suit against the defendant for a balance due on an open account for material sold to and used by the latter in the construction of his residence on a lot of ground in the town of Eunice, parish of St. Landry. More than sixty days after the date of delivery of the last material sold, plaintiff had, on advice of its attorney, caused an affidavit and itemized account to be recorded in the mortgage records of St. Landry parish in order to preserve the lien which the law accords to the furnisher of building supplies and materials. Judgment is accordingly prayed for in the sum of $1,473, the balance claimed to be due, with 5 per cent interest and for recognition of the lien and privilege on the defendant's property.

Defendant does not dispute the account nor the balance claimed, his defense being that among other material plaintiff sold him was a filler that was to be used in covering the joints or seams between the slabs of sheet-rock which he was using as a ceiling on the inside of his house, and that this filler turned out to be defective and was not at all what it had been represented to him as being. He alleges in his answer that not long after the job had been completed and the filler had dried, it crumbled into dust leaving unsightly cracks and crevices in the walls and ceiling of his home, causing him damages to the extent of $614.50 which he will have to pay because of the necessary repairs that have to be made. This amount, together with further damages in the sum of $600 caused by the illegal recording of a lien against his property and also damages to his good name, credit and business reputation to the extent of $10,000 because of the malicious circulation of false and slanderous statements to other of his creditors by the manager of the plaintiff corporation, he asks for in a reconventional demand which he presents with his answer.

The lower court rendered judgment in favor of the plaintiff for the full amount claimed, with legal interest from judicial demand, dismissed the reconventional demand, ordered the lien to be cancelled and cast defendant with the costs of the main demand and the plaintiff with the costs incidental to the cancellation of the lien.

The record discloses that on a separate trial of a rule for the cancellation of the lien, defendant had already deposited in escrow in the Opelousas-St. Landry Bank & Trust Company an amount sufficient to offset the claim, and the court had in turn

ordered the bank to deposit that amount in the registry of the court to stand in lieu of the lien and ordered that the latter be cancelled. The plaintiff has taken an appeal from that part of the final judgment ordering the cancellation of the lien and their counsel are now pressing us to pass upon its validity. We note, moreover, a statement in counsel's brief to the effect that they have collected their judgment from the amount deposited in the registry of the court which stood in place of the lien on the property, so, it strikes us, as it seemed to have also impressed counsel, that any discussion as to the validity of the lien would be purely academic. It is a moot question as far as this record shows and requires no adjudication from this court in the present controversy. The only possible complaint we believe plaintiff could urge against the judgment now, is that part which condemns them to pay the costs incidental to the cancellation of the lien, but it seems to us that the amount thus involved is so small that the question which it presents might properly be disposed of under the maxim de minimis non curat lex.

Defendant appealed devolutively from that part of the judgment which condemned him to pay the balance claimed by plaintiff and which dismissed his reconventional demand.

In their brief, his counsel make reference only to the claim in reconvention for the expenses he will be put to by reason of the repairs which have become necessary, and which are estimated at $614.50. We understand that all other claims in reconvention have been abandoned. The issue, as we see it, then resolves itself into one of avoidance of a sale on the ground of redhibition and a claim for reimbursement of expenses occasioned thereby, under articles 2520 et seq. of the Revised Civil Code.

It appears from the testimony that after the defendant had decided to use sheet-rock as a ceiling in his new house, he next became interested in what sort of finish could be best used to close the seams between the boards or slabs and cover them in such way that they would not be left visible.

It appears that there are two kinds of filler used on a job of this sort, one which is used alone and another which is covered with a tape of some kind. From the difference in price between the two it is apparent that a better job will result from the use of the filler with the tape. This is further borne out by the testimony of the several carpenters who testified for the defendant. Not only that, the latter himself took the trouble of wiring the United States Gypsum Company, at Chicago, large dealers in sheet-rock and who sold the very filler he used, to get their opinion as to which would make the better finish, and their reply could leave no doubt in his mind that he would obtain better results by using the tape. Two of the carpenters who worked for defendant on this very job of filling joints in the sheet-rock testify that they told him of the fear they had of it not holding up without using the tape. Another carpenter, whom the defendant had to make an estimate of what it would cost to repair the damage to the joints, submits his written report in which he attributes the crumbling of the filler to the failure to have used the tape. Surely there is sufficient evidence in the record on which to rest a conclusion that this defendant had all the opportunity he could desire to satisfy himself as to the quality

of the filler he bought and whether it would serve his purpose as well as anything else. Indeed, it would seem that after the investigation he made himself and all the information he received, that he was better posted about it than was the manager of the plaintiff company who sold it to him. But even then, we do not find him making any complaint about the filler, but answering repeated demands made on him for payment by asking for more time in which to pay. Some of these requests for delay came at a considerably long time after he claims the cracks began to appear in the joints in his walls.

In the case of Great Eastern Oil & Refining Co. v. Bullock, 151 La. 209, 91 So. 680, we find two principles of law laid down in actions of this kind, which we think are controlling here. The first is that where the purchaser has the means of finding out for himself the qualities of the thing sold, he cannot complain of any alleged misrepresentation by the vendor. The other is to the effect that the purchaser who has knowledge of the facts he claims exists, does not complain when it is time for him to do so, that is, when payment becomes due, but on the contrary, asks for and obtains an extension of time, which the seller would not have granted had he suspected that the buyer was about to repudiate his obligation, is estopped from afterwards complaining.

Applying these two principles to the facts as we view them in this case, we are bound to hold with the district judge that the plaintiff is entitled to recover the amount of its claim and that the defendant cannot recover on his reconventional demand.

The judgment of the lower court is therefore affirmed.