**166 So. 482**

**DAVIDSON LAND & INVESTMENT CO., Inc., v. ZENORIA LUMBER CO., Inc.**

**No. 33638.**

Feb. 3, 1936.

Rehearing Denied March 2, 1936.

Dickson & Denny, of Shreveport, for appellant.

Thompson & Thompson, of Monroe, for appellee.

FOURNET, Justice.

This is a suit against the defendant, Zenoria Lumber Company, Inc., to recover damages for the wrongful cutting of oak, gum, cypress, and pine timber from the lands of the Davidson Land & Investment Company, Inc., plaintiff, amounting to $1,-653.15, subject to a credit of $103.50, and for the additional sum of $2,000 for damages to the property.

The defense is that the timber was cut and made into ties by tie contractors pursuant to an agreement evidenced by a letter addressed by the defendant to the plaintiff of August 24, 1935, and the plaintiff's answer thereto by letter dated September 1, 1935, together with a telephonic conversation on January 15, 1935, between L. L. Davidson, president of the plaintiff company, and W. D. Lurry, manager of defend-

ant company, whereby the defendant was authorized to make contracts on behalf of plaintiff to have its timber cut and made into ties at 5 cents per tie; and if any timber was wrongfully cut and removed and its property damaged as alleged by the plaintiff, that it was not the act of the defendant, its agents, or employees.

On these issues the case went to trial. While the case was in progress, the defendant, in open court, admitted that after checking over its records, in addition to 5,-065 ties theretofore accounted and paid for, it found that there were 828 ties which had not been accounted for, and made a tender of $41.40 in payment thereof, plus such court costs as had accrued up to the time of the tender, which was refused by the plaintiff.

The trial judge rendered judgment in favor of the plaintiff for the sum of $41.40, together with the costs which had accrued up to the time of the tender of the amount, and denied plaintiff's demands in all other respects. Plaintiff has appealed.

The sole question for our consideration, therefore, resolves itself into the question of fact; that is, whether the plaintiff has established its case by a preponderance of evidence.

On August 24, 1933, the defendant wrote the following letter to the plaintiff:

"Zenoria, La. August 24th, 1933.

"Mr. L. L. Davidson, c/o Loraine Lumber Company, Shreveport, La.

"Dear Sir: We have sold the oak stave and tie timber on our LaSalle lands along Little River. As this is the first opportunity that we have had whereby we could sell the tie timber and the stave timber to be worked at the same time, and we have refused to sell the timber for either one of the purposes as there would be too much of the tree cut down to lay and waste, and there would not be enough of the cut-over timber for one of the operations to justify paying a man to stay on the job in the woods and scale, check up and look after our interest, and we knew if this was not done we probably would not get paid for more than ½ of the timber actually cut. With our sale, the amount cut daily, weekly or monthly will justify us in keeping a man in the woods to scale up the timber and check up the ties.

"We are very glad to have been able to make this sale, as it is the first opportunity we have had in 7 years to get anything out of these lands to help us pay the taxes and the carrying charges, and it appears to us that you would perhaps like to sell the cut-over timber on your lands in Townships 8, R. 1, and 8–2, 9–1, and 9–2, being the same lands that we bought from you, in order to assist you in taking care of part of the overhead in carrying these lands.

"If you would care to sell the timber we would be willing to pay you $2.00 per M. for the timber that can be worked into stave bolts and .5¢ per tie for the timber that can be worked into cross ties. The present price of stave bolts in this territory is $1.25 to $1.50 per cord and this will give you around $2.50 per cord by selling the timber by the M. and having it scaled log scale instead of measured cords or bolts, and the prevailing price for cross ties is 5¢, and as above

stated, in as much as your lands are mixed in with our lands and we can have the same man that does our work take care of the timber cut off of your lands we thought you might wish to sell same, and if interested we would be glad to hear from you.

"Yours very truly,

"Zenoria Lumber Company, Inc.

"WDL*T T           W. D. Lurry."

Defendant accepted plaintiff's order, in its letter of September 1, 1933, as follows:

"September 1, 1933.

"Zenoria Lumber Company, Inc., Zenoria, Louisiana.

"Attention: Mr. W. D. Lurry.

"Gentlemen: In regard to your letter of August 24, 1933 and our recent conversation, beg to advise that it is entirely satisfactory with me for you to handle the sale of the oak stave and tie timber on the LaSalle Lands along Little River.

"We have taken the matter up with the Bank of Jena and this arrangement is entirely satisfactory with them, as we stated that you could make all remittances to them, said remittances to be made on the 10th and 25th of each month. It is also satisfactory with me and the bank for you to take out 10% to cover the costs. It will also be satisfactory if you are able to sell the gum timber along with your gum timber.

"Trusting that this will be satisfactory with you and with personal regards, I remain

"Yours very truly,

"LLS D

"cc: Bank of Jena, Jena, La."

If this suit was for the breach of a contract, we would only have to look to the contract and any evidence tending to show any breach thereof. But plaintiff alleges and contends that the timber was not cut under authority of the agreement as reflected by the foregoing letters; that, on the contrary, it was cut without the knowledge or consent of plaintiff; that as soon as it became apprised of the operations, it immediately notified the defendant to cease cutting timber on its lands, and that it is entitled to recover the manufactured price of the ties so cut and converted to its use and benefit by defendant; and, in the alternative, to recover the stumpage price of the timber. Plaintiff also contends that the timber was not cut clean, and, as a result thereof, the timber and property were damaged to the extent of $2,000.

All the transactions with reference to the cutting of the timber between plaintiff and defendant were conducted by the president of plaintiff company, Mr. L. L. Davidson, and Mr. W. D. Lurry, manager and agent of the defendant company. Mr. Davidson testified that he positively had a verbal agreement with the defendant's manager, Mr. Lurry, that the timber be "cut in forties"; that the contract, as reflected by the letters, was actually canceled, but that during the month of January, after the cancellation of the contract, Mr. Lurry called and asked if he could start to work on the timber, stating that he had 40 men to start in the next day or two, and that he agreed, but that the said conversation over the telephone had nothing to do with reference to the pine or cypress timber. On the other

hand, Mr. Lurry testified that the tie contractor had been operating on defendant's property until January 15, 1934, when it became impossible to operate there any longer because of the swampy condition of the terrain and the high water, and the contractor, therefore, desired to cut the pine timber on defendant's property because of its proximity to the place where they were operating and being on a ridge. Not having express authority to do so, he called plaintiff's president, Mr. Davidson, for the specific purpose of getting authority to contract for and on behalf of plaintiff for the cutting of its (plaintiff's) pine timber into ties, for which it would be paid at the rate of 5 cents a tie, and that he (Lurry) was authorized by Mr. Davidson to do for plaintiff's company as he was doing for his (defendant's) company. This telephone conversation took place in the presence of Mr. Harvin, one of the tie contractors, who corroborated Mr. Lurry's testimony. It also appears from Mr. Davidson's testimony that plaintiff was anxious to sell the pine timber on its land. The reason why the same was not included in the agreement as reflected by the letters is brought out by him in his testimony as follows:

"I'll explain the conversation as well as I can remember. Mr. Lurry had written us about cutting the oak timber to make stave bolts; that all the tree would not make stave bolts and what would not make stave bolts would be put into ties. We were to receive $2.00 and $2.50, I don't remember which, the letter shows, though, for the stave bolt timber and five cents for each tie that was made out of the tops of the trees

that wouldn't make stave bolts. *We further asked Mr. Lurry about cutting the pine and the gum and making it into ties, and he said it was not practical, that the price at that time would not justify us to make ties, and it would ruin the timber."* (Italics ours.)

The fact that the cutting of the pine timber was discussed is corroborated by the testimony of Mr. Lurry's explanation of the transaction, as appears from the following excerpt from the evidence.

"Q. You wrote this letter of August 24th, did you not? A. I did.

"Q. Did Mr. Davidson reply to that? A. He did.

"Q. Do you remember under what date? A. September 1, 1933. As I remember, he had been down previously and we had talked it over.

"Q. What was the subject of that conversation? A. Well, I can explain better by telling the whole conversation. We had this contract with Lovell to cut all of our timber both north, south and east of Davidson timber and we had a man employed to check the cutting and see that it was cut right and check the measurement and so on, and Mr. Lovell came to me and wanted the timber between where he was cutting and the river and I advised him whose it was and that we had released a year or two previously, our timber rights on it, and he asked me if I would take it up with Mr. Davidson and see if he could make arrangements for all of it and I did and explained to him that we could have it all looked after by the one man and it would save the costs to both of us, and the letter there speaks

for itself about our agreement at that time. *It was only agreed that we cut everything but the pine, the pine was discussed and they didn't want the pine. He wasn't interested in the pine at that time.* (Italics ours.)

"Q. What preceded August 24, 1933? A. It was after that and before September 1, 1933.

"Q. That was the conversation during the interval? A. Yes. And that was perfectly satisfactory with Mr. Davidson.

"Q. Following that conversation he wrote you the letter of September 1st? A. That is my recollection. It is my recollection that Mr. Davidson came down and discussed it. It might have been after that."

 We think the evidence shows that the timber was cut pursuant to the agreement as reflected by the letters and a telephonic conversation between the president of the plaintiff company and the manager and president of the defendant company on January 15, 1934. The trial judge was of the same opinion, and we agree with him.

Plaintiff alleges in its pleadings that 5,944 ties were made, while the defendant admitted in its pleadings that 5,065 ties of all kinds had been made and settled for, but during the trial, as heretofore stated, defendant discovered that additional ties had been made, for which it had not accounted to plaintiff, thus showing that the total amount of ties admitted to be made was 5,893, or a difference of 51 ties between the two claims. The number claimed by plaintiff was estimated, whereas the number of ties defendant contends was made by the tie contractor, and for which Lurry collected, was arrived at by actual count. This testimony is uncontradicted. Under these circumstances, we are constrained to hold that the plaintiff was entitled to be paid for 5,893 ties, of which 5,065 were paid for, thus leaving 828 ties to be settled for. The defendant offered to pay for them in open court, plus costs incurred up to that time. The tender was admitted but refused by the plaintiff as coming too late and not being for the proper amount. The plaintiff, having refused the tender, it is bound to pay all costs which have accrued since its refusal to accept the same. Articles 404 and 416, Code of Practice.

For the reasons assigned, the judgment appealed from is affirmed.