TALIAFERRO, Judge.
This is a redhibitory action in which the plaintiff seeks to have rescinded and set aside a sale to him by the defendant of one floral refrigerator, and for return of $600.-00 paid on the price thereof. The sale was concluded on January 23, 1948. The price was $1,695.19, including tax, of which amount $100.00 was paid in cash. Plaintiff gave his note for the balance, payable $100.00 per month. He made five additional payments thereon. The refrigerator was purchased for the purpose of exhibiting flowers for sale and to preserve their beauty and freshness while being held for sale, qualities indispensable to the success of a business of this character. To provide this service the temperature of the refrigerator must be kept within certain degrees. It is electrically operated.
Plaintiff alleged that he is not a refrigerator expert, and, therefore, is unable to aver specifically the vices and defects that affect the refrigerator, but did allege that because of vices and defects, it, soon after installation, became useless and valueless to him and would not function for the purposes for which it was acquired; that because of its failure in this respect, he called upon defendant to remedy the defects and restore the box to satisfactory mechanical condition; that after considerable delay an engineer of the factory that manufactured the refrigerator came to plaintiff’-s place of business and attempted to remedy its vices and defects, but whatever was done by this engineer failed to accomplish any improvement in the refrigerator’s unsatisfactory condition, which was demonstrated by subsequent trials and tests.
Plaintiff also sues to recover the value of flowers allegedly lost from spoilage, the sum of $300.00, which he charges was directly due to the imperfection of -the box. However, this claim, during trial, was expressly abandoned.
Plaintiff also avers that he tendered the box back to defendant, after being convinced that it could not be made to efficiently function, on condition that the $600.00 paid down by him be refunded. This, of course, was refused.
Defendant denies all of the material allegations of fact relied upon by plaintiff as a predicate to this action, and affirmatively alleges that the refrigerator, when delivered to plaintiff, was free of any defects or vices that would militate against its efficient operation and that this condition has prevailed since then. Defendant also alleges, without admitting that the box was in any wise imperfect, that a new box of the same design and manufacture was tendered to the plaintiff before this suit was filed, •in lieu of the other one, and he refused to accept same; that this tender was made in the hope and out of a desire to satisfy plaintiff who seemed to be unusually hard to please.
By way of reconvention, defendant availed itself of the accelerating clause in the note representing the balance due on the purchase price, declared the whole balance due, and sued to recover judgment for said balance, being $1,085.19, plus interest and ten per cent attorney^ fee, with recognition of the vendor’s lien and privilege on the machine.
Plaintiff’s demand was rejected. There was judgment for the defendant in recon-vention as by it prayed.
The sole vice of the.refrigerator, if any, of a redhibitory character, ..was its failure to maintain a temperature (from forty-two to forty-eight or fifty degrees) adequate to preserve the freshness, within time limitations, of flowers placed therein.
Plaintiff here contends that the temperature would vary from forty degrees to seventy-five degrees, and as a result the coil became so heavily frosted and/or covered with ice that it necessitated defrosting three times per day, and this, each time, required from one hour to one and one-half hours. *642 It is shown that a constant temperature of forty degress is too cold for most flowers, and that under a temperature of from sixty-five degrees to seventy-five degrees flowers will prematurely wilt. But plaintiff testified as regards defrosting as follows, to-wit: >
“Q. How many times a day was it necessary to defrost it? A. I didn’t do it every day, hut maybe every two or three days when it would ice up, you see; or four or five days — whenever it needed to be defrosted, just like the refrigerator at home.”
This testimony thereafter was repeated by him.
The complained of defect allegedly developed after the box had been in use some thirty days or more. Defendant was notified and according to the testimony of its agents, whatever shortcomings that existed, were remedied by proper adjustment, whereas plaintiff is positive that no good whatever was accomplished by these efforts.. Plaintiff continued to complain that the box inefficiently fmictioned and as often defendant would send some one to his place of business to look over the refrigerator, etc., but in each instance plaintiff says the same futile efforts were made. Notwithstanding all this and that, according to plaintiff the box actually rendered no service, but, in fact, “did more damage than good”, he continued regularly to make monthly payments on the note, to the number of five.
Plaintiff’s complaints 'became so regular and incessant that, although defendant was satisfied the box was free of vices and defects, it requested the manufacturer’s dealer in Beaumont, Texas, to send one of its engineers to Shreveport to the end that a complete check-uip of the box could be had and plaintiff be made satisfied, if such were possible. This engineer arrived in the month of September, 1948, some nine months after defendant purchased the refrigerator.
In the meantime, defendant • reported to the manufacturer that it (defendant) had a dissatisfied customer, and it was arranged that a new refrigerator be sent to Shreveport to be tendered to plaintiff. The tender was refused. This tender was made not from an admission that the other box was defective, but out of a desire to satisfy plaintiff and remove from the field one who might prove injurious to the company’s business; and, to some .extent, was made because of the friendship which existed between plaintiff and defendant’s president.
The engineer referred to, made no changes in the mechanical set-up of the box, save to place inside of it the air switch that was theretofore attached to some part of the building near the box, and connect it with the coil. The function of this switch is temperature control. It is easy of manipulation and provides the means through which temperature within the refrigerator may, from time to time, be determined.
Plaintiff’s primary complaint was that flowers placed in the box would prematurely wilt and become unmerchantable due to lack of proper temperature. His only effort to substantiate this charge involved roses ordered by a customer to be sent to a patient in a sanitarium. On complaint that the roses prematurely lost their .freshness and beauty, others were sent to the patient. However, it is shown to our satisfaction that neither bouquet was ever in plaintiff’s box. They were ordered by plaintiff’s employee from a wholesale florist in the city and then promptly delivered by plaintiff to the sanitarium.
• It is not uncommon, — in fact, it is to be expected, that any retail florist will lose some flowers from spoilage, regardless of efficient functioning of his refrigerator. This may be due to several things, inter alia, the age of the flowers when placed therein, and the time held awaiting sale. This is especially true of roses.
Study of the record leaves us without doubt as to the refrigerator’s efficient functioning .after the factory engineer’s visit, regardless of what may be said of such functioning prior to that- time. ■
Plaintiff had had no experience whatever a-s florist prior to engaging therein in December, 1947. He did employ a' very competent floral designer in the person of Mrs. Barbara Champion, who had had many years experience in that line of business. *643 So far as the record discloses she was his' only help from the beginning of the business, and remained with him until 'some two weeks prior to the time of trial of this case, in March, 1949. Plaintiff did not tender Mrs. Champion as a witness but defendant did. Her testimony should have controlling weight as regards the operation of the box and the loss of flowers from spoilage. It is obvious from her demeanor that she reluctantly testified against plaintiff.
Mrs. Champion testified that a month or so after the box was installed some difficulty was experienced in maintaining uniform temperature for the flowers, but even with this the loss in flowers was negligible, and that the box functioned well after the factory engineer checked it. It is easily deductible from her testimony that excessive frosting was largely, if not entirely due to plaintiff’s action infrequently keeping the switch too low. Witnesses who visited plaintiff’s place of business a few days prior to trial, found the temperature of the box all right and the flowers therein in proper condition.
The testimony of experts who appeared as witnesses in the case is to one accord with respect to-the contention that the coil would frost or ice so heavily that defrosting had to be resorted to two or three times per day of twenty-four hours. All agree that such a thing is mechanically impossible, especially if the switch is set on a temperature admittedly adequate to preserve flowers.
The conclusion is easily reached that plaintiff either became dissatisfied with the business of florist, about which he knew nothing to begin with, and decided to recover the amount he had invested in the box, as he is seeking to do, or that he concluded he needed a refrigerator of a different type. Mr. W. D. Smith, Sr., president of defendant company, testified, and we perceive of no sound reason for him to falsify, that prior to and after the suit was filéd, plaintiff admitted to him that the box was not of the type he wanted. Mr. Smith then said to him that he would accept return of the box and allow him credit for the amount he had paid on its price, on any other refrigerator he wished to buy from him. This offer was evaded.
Considerable testimony was adduced concerning the condition of one of the sliding doors. Some witnesses stated that on account of the door not fitting'properly, air was admitted, but many witnesses testified that the air that entered the box through the narrow opening would not affect appreciably the box’s inside temperature. This lack of perfect closing developed after the manufacturer’s engineer examined the box, at a time it had been in use for around nine months or more. Granting that such an opening, as contended, did exist, surely it is not a redhibitory vice. It could be remedied in an hour’s time and at a cost not in excess of $5.00. Aside from all this, it is shown that plaintiff often employed too much force in closing the doors. This could have brought about, and perhaps did, a condition that prevented the door’s perfect closing.
Plaintiff was not legally bound to accept the refrigerator tendered to him in lieu of the embattled one, but refusal to accept the same certainly militates against the good faith of his position in the case.
Only questions of fact are involved. The lower Court’s resolution of these facts is manifestly correct. Plaintiff carried the burden of proving his allegations. He signally failed to do this.
For the reasons herein assigned, the judgment from which appealed is affirmed with costs.