McBRIDE, Judge.
Plaintiff, Emile Schexnayder, purchased from R. H. Stansbury, doing business as Kwik Motor Company, on or about November 15, 1948, a secondhand, rebuilt 1937 Ford V-8 automobile motor block, for the price of $103 in cash plus a trade-in to defendant of a motor block valued at $35, and by this suit he seeks an avoidance of the sale and a return of the purchase price, alleging that the motor block purchased was cracked and is unfit and useless for the purpose for which it was bought.
Defendant’s answer amounts to a general denial of plaintiff’s allegations. This appeal was taken by the plaintiff from the judgment below dismissing his suit.
Plaintiff and one Bourgeois engaged in the venture of building a motorboat, the size and type of which are not disclosed by the record. The work was done in the basement of Bourgeois’ home./ After the hull of the boat was constructed, plaintiff bought the automobile motor block, believing it to be in good condition, and it was installed in the hull so that the cabin of the boat could be built over it, the -parties intending to' convert the block for use in a marine engine with which the boat was to be propelled. It is disputed whether Stansbury was informed that the purchaser planned to use the motor block for such purpose.
At any rate, more than three months after the sale, the construction of the boat was completed, and Schexnayder and Bourgeois then tested the motor with two hoses running from the motor into a tubful of water serving as a cooling system. After operating the engine for about two hours, it was found that water had entered the crankcase. They then changed-the cylinder head gasket, replaced the oil, and the motor was run for another hour, with the same result. It was then that they discovered the crack in the motor block.
Sometime within the weeks afterward, the block was returned to the defendant, who still has possession of it. There is conflict as to what was said by plaintiff and defendant as to the disposition to be made of the motor block, but that detail is unimportant in arriving at a determination of the case.
Stansbury denies that the block was defective at the time of the sale. He states that he has been in the business of repairing motors for thirty-six years, and that before the sale he made an examination of the motor block, which he had rebuilt, checking it by washing it inside and outside with a steel brush, and that there was no crack.
Schexnayder and Bourgeois, who admit they are not experts and had never before converted an automobile motor to marine use, performed the work themselves in accordance with a set of plans.- They spoke of a mechanic being present when the motor was tested, but this mechanic was not produced as a witness. Stansbury testified :
*547 “Q. Mr. Stansbury, would there be any reason for not using an automobile motor block in a marine engine? A. Yes, sir, there are several reasons. The main thing is they are not built for marine purposes because the pump on the motor fails to pick up the water quick enough, in time, and the heat from the motor when it does pick it up, it being cold, it will crack the block.
»****»
“A. A motor can be cracked from being overheated and when it’s overheated the weakest spot will crack. On the other hand, in testing it you not supposed to put too much pressure- on it because if you do, you might crack it.”
No attempt was made by plaintiff to show the nature of the work -and whether the motor block was properly converted for service in the boat. Also, there being no testimony on the point, we are at a loss to know if the engine was .adequately cooled while being tested. According to Stansbury, an automotive motor block is not adaptable to serve in a marine engine, because the pump on the motor fails to pick up water quickly enough, and when a motor is overheated the block will crack at the weakest point. He is positive the block was not cracked when it left his establishment.
Under the circumstances, we cannot conclude that the motor block was in a cracked condition when Schexnayder bought it. It occurs to us that, perhaps, unskilled labor in altering the block, or the temporary cooling system used in the tests, might well be the cause of the imperfection of which plaintiff complains.
Schexnayder has not borne the burden of proof imposed upon him by law.
 A sale may be rescinded at the instance of the buyer on account of some vice or defect in the thing sold, which renders it either absolutely useless., or its use so inconvenient or imperfect that it must be supposed that the buyer would not ■have purchased it had he known of the vice, R.C.C. art. 2520; but the buyer who institutes the redhibitory action must prove that the vice existed before the sale was made to him. R.C.C. art. 2530; Chas A. Kaufman Co. v. Gillman, La.App., 142 So. 159, and cases therein cited.
The judgment appealed from is affirmed.
Affirmed.
JANVIER, J., takes no part.