CAVANAUGH, Judge.
The plaintiff sues the defendant for $531.35, with interest thereon at 8% per annum from November 19, 1951 until paid and 15% additional on said principal and interest as attorney’s fees, which sum plaintiff claims due him as a balance on defendant’s promissory note for $611.35, dated August 27, 1951, due and payable in 61 weekly installments, the first installment being in the-sum of $11.35, due and payable on September 4, 1951, and 60 installments of $10 each beginning on September 10, 1951 and every week thereafter until paid. It is further alleged that payments of $80 had been made on the note commencing on September 24, 1951 through November 17, 1951.
The defendant admits signing the note sued upon but denies that he is indebted on said note except as specially pleaded; and further answering he sets out a special defense that during the months of February and March, 1951 he entered into an oral contract with plaintiff, whereby plaintiff agreed to furnish and erect for him at his place of business, a neón sign, together with the tubing, on a part of his building.;' that the purpose of said sign was to advertise his business of a drive-in at night; and that the defendant agreed that he would erect said sign in a good workmanlike manner which would advertise his business at night; that the sign was completed during the month of March, 1951; that a few weeks after the sign and tubing were installed, the tubing burnt a hole in the side of his building, which he reported to the pláintiff, who promised to repair the bad workmanship and put- it in good condition; that he told the plaintiff that the sign was useless unless it was illuminated, and that the plaintiff advised him that the sign had been placed too close to his building, and that at different times he requested the plaintiff to put the sign in good condition, and rriake it fit for the purpose for which he had purchased it. The defendant further pled that the plaintiff charged or invoiced him for $491.92 for the ■ sigh and that the difference between that sum and the $611.35 was for other merchandise purchased by him from plaintiff; that the sign and neon tubing had redhibi-tory defects which were unknown to him at the time said sign and neon tubing were installed and delivered, and that vices and defects made them useless for the purpose for which he intended to use it to advertise his business with neon lights at night and contends that the contract between them for the purchase, erection and installation of the sign and tubing should be voided because of the vices and defects in the sign, neon tubing and the installation thereof. The defendant further pled that the vices and defects existed before the contract was completed, and appeared immediately thereafter, and that since that time, the plaintiff has, from time to time, promised and agreed to correct the defects, but had failed to do so and that said sign and neon tubing are useless to him, and that plaintiff should be required to take said sign and neon tubing down at his own expense. The defendant, deposited in the registry of the court the sum of $51.31 which he claims represented $39.43 owed by him to plaintiff for other merchandise purchased from him with 8% per annum interest thereon from November 19, 1951, amounting to the sum of 28^, plus a minimum collection charge of $7.50 which defendant admitted owing and tendered it to the court. He obtained an order from the District Judge to deposit the sum in the'registry of the court in payment of the principal, interest and attorney’s fees to the date said sum was deposited along with the filing of -his answer and his demand against plaintiff on December 21, 1951.
Upon the issues reflected by the pleadings, the Lower Court rendered judgment in favor of the plaintiff and against the defendant for $51.31, and for all costs up to the trial, and ordered the Clerk of Court to pay the $51.31 deposited by the defendant to the plaintiff out. of the funds deposited in the registry of the court; and rendered judgment in favor of the defendant against the plaintiff avoiding, annulling and rescinding the sale of the neon sign and tubing for the price of $491.92 and declaring the plaintifi to be the owner of said property and ordering him to remove the same from the premises of the defendant, together with all costs incidental to the trial of the suit.
*165 The plaintiff appealed from the judgment and the defendant has answered the appeal praying that the judgment of the Lower Court be amended to allow the plaintiff and appellant the sum of $51.31 without costs, or the sum of $47.21 plus the costs to the filing of the answer.
The learned trial judge has tiioroughly reviewed the pleadings and testimony in the case in his written judgment, from which we quote; approvingly:
“ * * * Plaintiff and defendant contracted orally for the erection of a neon -sign and the.installation of neon tubing around the building occupied by defendant, the purpose,of which was advertising. All installational details except the location of the sign were left to the discretion of plaintiff. A statement, of Mohana’s Electrical Construction, Co., of which plaintiff is owner, dated March 31, 1951, and introduced in evidence as Exhibit ‘D-l’, shows a cost of $491.92, including taxes. The entry date of March 3rd on said statement indicates the probable erection and installation date. The installation was an addition to the original wiring of the building, the .connection having been made inside the attic and an extension made to the outside. The City of Houma supplied the electricity to the premises. No permit was secured from the City of Houma before installation, nor any inspection made after completion. The installation was made by Joe Haddad, an 'electrician employed by plaintiff, who had had about three or four years’ experience installing neon signs before military service and about six years after service. The tubing installed on the building was second-hand, while that on the sign was new. The sign operated properly for two or' three days, after which one side ‘burned out’. The tubing around the building never operated properly, but either blinked or was partly extinguished. About three or four weeks after' the installation, a ‘short’ developed which caused a fire at the corner, of the building and damaged the structure. Defendant’s wife saw the fire and turned off the main switch, and several persons present extinguished the fire. One wire appeared to' be burned in two-. The sign and tubing were then disconnected because of the fire hazard, and were never lighted thereafter. On August 27, 1951, defendant executed the note declared upon for the principal sum of $611.35,, covering the cost of the neon sign and1 tubing in the sum of $491.92 and a balance due on appliances previously purchased. He paid $40.00 on account on September 24, 1951,' and four installments of $10.00 each on October 1st, 9th and 22nd, and November 17th, 1951.

if if if if if if

“An important fact in dispute is whether defendant timely complained. Defendant’s testimony is that plaintiff visited his place from time to time and that ‘his family eats here’; that the first such visit was immediately after the installation, when plaintiff himself observed that the sign had not been properly located so as to be readily visible and stated he would install a sleeve and extend the sign eight or ten feet out; that the day after the fire he spoke by telephone to plaintiff, who stated T will see you about it’; that at other times when he spoke to Mohana, plaintiff told him he was short of help or materials, but that T will get to it as quick as I can’; that ‘It kept on until I signed this note’; and that T was promised that it would be fixed and put in good condition if I signed that note and get it all in one paper.’ He testified that he spoke to Mohana every month about it, and that both plaintiff and Shannon, his bill collector, made the promise to repair the damage.
“Mrs. Woodall testified that Shannon promised that if Woodall came up and signed the note the repairs would be made.
¡‘Plaintiff’s testimony is that he heard about the fire, but that after its oc *166 currence he never saw or spoke to defendant, that he never received any complaint from him, and did not know that Woodall was complaining.
“The testimony shows that plaintiff owns the Houma Electrical Appliance Co. and Mohana’s Electrical Construction Co. Travis Shannon testified that he is manager of the appliance company and that the bill collector for both companies, and that he has full authority as to all matters relating to the appliance company, but none as to the construction company except to collect accounts due. He recalled * * * that Woodall told him ‘the sign had shorted out or got the building on fire’, 'and that he saw where the latter had burned. He stated: ‘Mr. Woodal mentioned he would like to have the sign corrected. I told him I had no jurisdiction on it and suggested he call Mr. Mohana.’ He testified that the note covered sums due to both the appliance company and the construction company, that Woodall made no complaint about the fire at the time he signed the note * * *, and that he himself made no promise or commitment at the time the note was signed that the sign would be corrected or repaired. He stated: T definitely would not promise to have anything done that I didn’t know anything about. I could make commitments about the store — but not about electrical work’ * * *. The witness said he went a number ' of times to Woodall’s Drive-In to collect money, but never made any promise about repairing the sign and tubing. He declared: T advised Mr. Woodall to see Mr. Mohana if he wanted to have anything done about the sign. I made no commitments’ * * *. He said he spoke to Mohana: ‘I told Mr. Mohana Mr. Woodall mentioned it to me. In each case he asked me what I told Mr. Woodall, and I said I told him to see Mr. Mohana’. * * *; T told him on two or three occasions Mr. Woodall complained about it and that I referred him to Mr. Mohana’; ‘I referred Mr. Woodall to Mr. Mohana. I don’t know whether he ever saw him or not’ * * *
“The foregoing testimony convinces us that Woodall did complain, that he did so repeatedly, and that plaintiff was aware of the complaints.
“Plaintiff contends that the evidence clearly shows that defendant signed the note sued upon and made several payments thereon after he had allegedly complained and requested repairs, that these circumstances are similar to those described in Deville Lumber Co. v. Jaubert [19 La.App. 48], 139 So. 502, and that similarly the doctrine of estop-pel should be applied here. In that case, the Court found that the buyer was possibly better informed than the seller about the product at the time payment became due, that he made no complaint when it was time for him to do so, but, on the contrary, asked for an extension which would not have been granted had the seller expected repudiation, and that under those circumstances the buyer was estopped from afterwards complaining. In this case, defendant complained early and, we believe, often, and it is altogether unlikely that plaintiff was taken by surprise when defendant resisted payment. In American Heating & Plumbing Co. v. Veters [La.App.], 164 So. 277, the buyer both complained and paid on account and the Court held that no estoppel resulted, for it found that from the beginning payment was made under protest and ‘the silence of plaintiff imported an implied acquiescence in this arrangement’. In the instant case, there is no showing or claim that payments on the note were made under protest, but only that complaints had been made about the neon installation. ' However, since 80% of the note covered that installation and 20% covered purchases not complained about, and the payments made had not yet reduced the principal of the note to the amount due for the neon installation, it is obvious that no protests would have been in order or entitled *167 to consideration. We find it difficult to believe that defendant, after repeated complaints, would have signed the note sued upon without some assurance that the subject of his complaints would be taken care of. So inconsistent are the complaints on one hand and the written acknowledgment of indebtedness on the other, that reason tells u's that there must have been some inducement for the latter. Viewed in that light, we are disposed to give some weight to defendant’s testimony in that regard.
“The jurisprudence indicates that on the whole estoppel is not favorably regarded in law, and that generally the ground therefor must be firmly and unequivocally established to warrant maintaining the plea. We find no such establishment in this case, and, accordingly, the plea of estoppel, advanced only in plaintiff’s brief, is denied and dismissed.
% >[;
“At the outset of the trial, plaintiff obj ected to the introduction of any evidence tending to prove a redhibitory vice as the basis of the rescission of the contract on the ground that the law is ‘to the effect that in order for the contract to be rescinded for redhibitory vice there must be proof of the offer of the merchandise which constituted the substance of the sale’, and that ‘there is no allegation to that effect in the answer and no evidence of redhibitory vice is admissible’. He cites Womack v. Lafayette Furniture Co. [La.App.], 50 So.2d 843, which holds that ‘in a red-hibitory action the vendee must allege and prove tender or offer to return the merchandise.’ He points out the case of Barrett v. Bullard, 19 La. 281, holding that such a tender must be made before suit is brought. Also cited are Schexnayder v. Stansbury [La.App.], 45 So.2d 545, Baker v. Smith Brothers Equipment Company [La.App.], 46 So.2d 640, and A. Baldwin & Company v. Wall [18 La.App. 339], 138 So. 442, relative to the burden being on the buyer to prove redhibitory vices. Plaintiff argues that in the absence of an allegation of a tender or offer to return the merchandise before suit, no evidence tending to prove redhibitory vice was admissible. All testimony was admitted subject to his objection.
“We believe plaintiff’s position would have been well taken and unanswerable if defendant had instituted this proceeding. Under the jurisprudence cited, defendant would have been obliged to allege and prove tender as a condition precedent to a demand for rescission. However, the law does not require a vain and useless act. And we believe that in the light of plaintiff’s active and passive behavior, viz.: — passive in his heedlessness and indifference toward defendant’s complaints long before he filed suit, and active in his utter disregard of them by filing of suit -for recovery of the purchase price of the property made the subject of complaint, any tender or offer by defendant would have been vain and useless. Moreover, it seems to us that the institution of suit by plaintiff foreclosed any opportunity for defendant to make tender and with it any right of plaintiff to require it. We believe that upon the filing of suit, nothing remained for defendant to do but answer, and to urge whatever defense was available to him within the limited time prescribed by law. He did so and, in our opinion, properly raised the issue of redhibition.
^ «i» «Jí
“The question is whether the installation of the neon sign and tubing contained any vices. It appears to have been answered by the electrician who made it. He testified * * * that he knew nothing of the fire, but that T did know it was going to catch, though’; and that T knew any time the unit would go bad that the high tension would ordinarily jump to a ground, and many a time I passed there and I have seen it dim and just left it as it was.’ His testimony is that neon tubing is apt to break at any time, that bugs will accumulate on it and an elec *168 trode will break off, that under such circumstances either the transformer. will ‘go 'bad or your wiring will short out’, and that the use of neon tubing under those conditions creates a fire hazard. While he stated that such a situation was not unusual in the use of neon tubing, we are unable to disabuse ourselves of the thought that any installation that presented a threat of fire could hardly be considered so commonplace as to be acceptable, since a fire hazard not only poses a threat to an individual, but also to a neighborhood, and possibly to an entire community. That the installation in this case was hazardous cannot be gainsaid since it was evidenced by the fact of a fire. And while we cannot point out any specific defect or vice, nevertheless it seems to us that any installation- that carried with it a potential fire hazard mu'st be inherently defective. It is undisputed that, after the fire, the installation was disconnected and never again lighted because of the hazard. It was, therefore, useless for the purpose for which it was installed, and we entertain no doubt that defendant would never have purchased it had he known of its vices.
“Accordingly, it is our opinion that this case falls within the purview of Articles 2520 et seq. of the [LSA-] Civil Code relating to redhibition, and that plaintiff is entitled to ‘avoidance’ of the sale.”
We believe that the Lower Court has properly disposed of the issues. We will supplement our reasons to his application of the law to the facts in the case because learned counsel for appellant argues that the Court erred in permitting the defendant and plaintiff in reconvention to urge as a defense the redhibitory vices and defects in the sign and tubing and their installation, when said defendant and plaintiff in recon-vention had not made a tender of the property purchased. The plaintiff urged below and seriously contends here that the Trial Judge committed error when he permitted the defendant and plaintiff in reconvention to offer proof of the redhibitory vices and defects in the sign, tubing and its installation over his objections when no tender was made.
The point to be decided here is whether or not a defendant when sued for the purchase price of an article has to make a tender of the article or merchandise before he can ask for rescission of the sale. The Lower Court held with the defendant and plaintiff in reconvention on this point by stating that it would have been a useless thing. We think he was right for the reason that the defendant is using his right of defense, as a shield in resisting payment of a sum he considered not due because the article was useless from the beginning, and would, not serve the purpose for which it was purchased. We agree that the purpose of the redhibitory action is to restore the parties to a status quo, and that the buyer is required to return the article and the seller is required to return the price. We quote the following from Vol. 23, page 131, Tulane Law Review:
“The’ purpose of the. redhibitory action is to restore the status quo. To accomplish this, the thing sold must be returned to the vendor and the price returned to the vendee. The Louisiana jurisprudence is not clear as to whether tender of the thing by the vendee is an essential prerequisite to -the successful prosecution of a redhibitory action. Some appellate cases have stated and others have inferred that the vendee must tender the thing back to the vendor in order to maintain a redhibitory action. However, the Louisiana Supreme Court in 1909 said that where the vendor instituted an action for the price of the thing sold, tender by the vendee would be but a vain gesture. The proper conclusion appears to be that in the situation where the vendee brings the redhibitory action as plaintiff, tender by him is essential, but where the vendee seeks rescission on a reconventional demand to a suit by the vendor for the price of the thing, tender is not necessary.”
*169 The plaintiff insists here that we should be guided by the decision of Womack v. Lafayette Furniture Co., La.App., 50 So.2d 843, Schexnayder v. Stansbury, La.App., 45 So.2d 545, and other cases cited by him in which it was specifically held that a tender of the article had to be made by the buyer before he could ask for a rescission of the sale. In the case of Womack v. Lafayette Furniture Company, supra, the plaintiff instituted the redhibitory action and not the defendant by reconventional demand, and in most of the other cases cited by plaintiff here in support of his contention the party seeking to rescind the sale was the plaintiff in the suit.
We find the following expression by Justice Monroe in the case of Woodward-Wight & Co. v. Engel Land & Lumber Co., 123 La. 1093, 49 So. 719, 724:
“Moreover, by the institution and prosecution of this suit, for the balance of the'price of the skidders, plaintiff, in effect, declared its intention to enforce the contract, and made it evident that a tender in avoidance of that contract would have been but a vain thing. We are, however, of opinion that the machines, in the conditions in which they now are, should be returned, as a condition precedent to the execution of the judgment for the repetition of the amount paid on account of the price.” Perkins v. Chatry, La.App., 58 So.2d 349.
The defendant and plaintiff in reconvention here paid $80 on the note after its execution, and he still owed the plaintiff the balance due for other merchandise he had purchased. He is not asking for any sum to be returned to him on account of any payment.
We are further fortified in our conclusion that the defendant in this case did not have to make a tender of the article because the evidence shows, and ’we believe the Trial Judge’s finding of fact was correct, that he had been led to believe at the time he signed the note and made the payments that the plaintiff would put the'sign in working order and eliminate the defects so it would serve the purpose for which it was purchased. Colt Co. v. Seal, 4 La.App. 618, Holcomb & Hoke Manufacturing Co. v. Theodora, 1 La.App. 445; Crown Cork and Seal Co. v. Grapico Bottling Works, 1 La.App. 638.
The plaintiff, under our law, must be held to have known that the sign, tubing and installation were defective because he constructed and installed them. His electrician knew when he made the installation that it would not serve the purpose for which it was purchased. .The sign, tubing and installation, being the plaintiff’s own work, and which he advertised to the world he was proficient in making, he is responsible for the vices and defects of his own fabrication. Tuminello v. Mawby, 220 La. 733, 57 So.2d 666; Doyle v. Fuerst & Kraemer, Ltd., 129 La. 838, 56 So. 906, 40 L.R.A., N.S., 480; Templeman Bros. Lumber Co. v. Fairbanks, Morse & Co., 129 La. 983, 57 So. 309; Electrical Supply Co. v. Pace, 12 La.App. 67, 125 So. 314.
Even if the plaintiff is correct in his contention that the defendant and plaintiff in reconvention must make a tender of the article which is the subject of the sale before he resorts to an action to rescind the sale on account of redhibitory vices and defects, we believe that the defendant’s plea in this case inferentially shows that, at the time he filed his answer, a tender was made of the sign, tubing and installation because he pled that the plaintiff should be required to take said tubing and sign down at his own expense, and prayed that the contract of sale between him and plaintiff covering the sign and tubing be avoided and set aside because of redhibitory defects, and that the plaintiff be ordered to remove said sign and neon tubing from his building. International Harvester Co. v. Carruth, La.App., 23 So.2d 473; Holcomb & Hoke Mfg. Co. v. Theodora, supra.
In the last cited case, the Court made this statement:
“Besides, defendant has made a tender of the machine. He made the only *170 kind of tender he could have jnade under the circumstances: He tendered the property in his answer. That, we think is sufficient, if indeed any tender at all be necessary in a case of this kind.”
We do not think that the defendant was estopped or waived his right to urge the redhibitory vices and defects in the sign and tubing when sued on the note. Complaint had been made to plaintiff by defendant from a short time after the installation of the sign and tubing and all along and at the time he was being pressed for payment. The evidence in the case unquestionably shows that plaintiff knew that the sign and tubing were not serving the purpose for which defendant purchased them. When counsel, on the argument of the case, was asked why plaintiff did not try to remedy the defects or place the sign and installation in working order, he stated that “plaintiff did not feel like sending good money after bad”. We find that the cases where a purchaser was held liable after he had discovered or knew of the vices or defects in the thing sold are cases where the use of the property was continued by the purchaser and he was benefited therefrom, but where the article purchased did not serve the purpose for which it was acquired and was of no useful benefit to the purchaser, the purchaser did not waive his right to urge the redhibi-tory vices and defects. Peterkin v. Martin, 30 La.Ann. 894; Roby Motors Co. v. Harrison, 19 La.App. 659, 139 So. 686; American Heating & Plumbing Co. v. Veters, La.App., 164 So. 277.
The fact that the plaintiff executed the note after he knew that the sign and tubing were useless and did not serve the purpose for which he acquired them would not foreclose his right to u'rge the redhibitory vices and defects in the sign and tubing because the sign, tubing and installation never served the purpose for which they were purchased. If the evidence in this case showed in the least that the sign, tubing and installation could be repaired to serve the purpose for which they were purchased, plaintiff would be entitled to recover the amount represented in the note for the fixtures and their installation, less the cost of repair and putting them in working order, but the evidence in the case unquestionably shows that the sign, tubing and installation only functioned properly for a few days after their installation.
The defendant and plaintiff in re-convention deposited in the registry of the court the sum du'e plaintiff for the balance for the merchandise included in the note, together with interest, attorney’s fees and costs. He obtained an order from the Court to make the deposit, and tender was made to prevent the accumulation of costs. It was timely made, and he should not be taxed with any cost accruing in, the lower court subsequent to the deposit or any costs here. The deposit of $51.31 covered the sum of $47.21 due plaintiff and admitted by defendant and the sum of $4.10 which represented costs due by defendant at the time of the filing of his answer. The District Judge awarded the plaintiff the $51.31 and taxed the defendant with the cost up to the filing of his answer. The judgment should be amended to award the plaintiff $47.21 and to tax the defendant with $4.10 court costs •accruing at the time his answer was filed.
The defendant appellee has requested in his answer to the appeal that the judgment be amended to award the plaintiff $47.21, with costs up to the filing of the answer, or $51.31 without costs. The judgment will be amended accordingly. Davidson Land & Investment Co., Inc. v. Zenoria Lumber Co., Inc., 184 La. 505, 166 So. 482.
For the reasons assigned, the judgment appealed from is affirmed except that the plaintiff, Louis J. Mohana, shall have and recover judgment against the defendant, Jessie M. Woodall, in the sum of $47.21 and for all costs incurred in this proceeding up to the trial thereof, and that the balance of the $51.31, or $4.10, be applied as costs due by the defendant appellee; and the Clerk of Court is directed to pay said sum of $47.21 to plaintiff out of the funds on deposit in the registry of the court and to ap *171 ply the balance of $4.10 out of said deposit to the costs due by defendant.
It is further ordered, adjudged and decreed that the said judgment in all other respects be affirmed and that plaintiff-appellant be taxed with the costs of the appeal.